Joseph DiANTONIO, Appellant,

v.

NORTHAMPTON–ACCOMACK MEMORIAL HOSPITAL and Gene Myers, Dr., Appellees,

Association of Trial Lawyers of America/Appellant, Amicus Curiae.

No. 79–1039.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1980.

Decided Aug. 26, 1980.

Walter H. Emroch, Richmond, Va. (Walter H. Emroch & Associates, Richmond, Va., on brief), for appellant.

Byron Peter Kloeppel, Portsmouth, Va. (H. Thomas Fennell, Jr., Cooper, Davis, Kilgore, Parker, Leon & Fennell, Portsmouth, Va., on brief), for appellee.

Marshall Coleman, Atty. Gen. of Va., Martin A. Donlan, Jr., Asst. Atty. Gen., Richmond, Va., on brief, for amicus curiae Commonwealth of Virginia.

James A. Eichner, Allen, Allen, Allen & Allen, Richmond, Va., Alan W. Clarke, Lively, Va., Associates of Trial Lawyers of America, Michael F. Colley, President, Association of Trial Lawyers of America, on brief, for amicus curiae.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and FIELD, Senior Circuit Judge.

HAYNSWORTH, Chief Judge:

In this medical malpractice action brought in the diversity jurisdiction, the plaintiff complains of the application to him of the Virginia Medical Malpractice Act.[1] It requires prior notice of intention to file a medical malpractice action and provides for mediation and decision by a panel of physicians and lawyers appointed by the Chief Justice of the Commonwealth. This action

---

1. Virginia Code § 8.01–581.1 et seq.

was dismissed for failure to give the prefiling notice. The plaintiff in this appeal contends that the Act may not be applied to a plaintiff in the diversity jurisdiction.

We recently upheld the application of a similar Maryland statute.[2] This plaintiff, however, levels other attacks upon the application to him of the Virginia statute. We are persuaded by none of them.

## I.

This case is properly within the diversity jurisdiction, for the plaintiff is a citizen of New Jersey and the defendant is a Virginia hospital. The plaintiff, of course, could have brought his action in one of Virginia's courts, in which event the Act indisputably would be applicable to him. He had a right to bring it in the Eastern District of Virginia, however, and consideration of a question whether filing in the federal court relieved him from the need of compliance with the Act should begin with a look to the Act's requirements.

The Act provides that "[n]o action may be brought for malpractice against a health care provider unless the claimant notifies such health care provider in writing prior to commencing the action."[3] Either side, within sixty days after the giving of notice, may file a written request with the Chief Justice of Virginia for review of the case by a medical malpractice review panel. The panel consists of three impartial lawyers, three impartial health care providers and one sitting judge of the state circuit court, who acts as chairman and who may vote only in case of a tie. The state's Chief Justice selects the panel members from lists provided by the state bar and board of medicine.[4]

Each member of the panel is provided with evidence proffered by each side. Under the 1979 amendment to Virginia Code § 8.01–581.4, depositions and discovery are available in the discretion of the chairman. Either side may request a hearing before the panel. Under the 1979 amendment to Virginia Code § 8.01–581.5, a hearing must be granted upon request. Prior to 1979, however, the panel had the discretionary power to determine whether a hearing was warranted. The rules of evidence need not be observed at the hearing.[5] The panel may issue subpoenas for the attendance of witnesses and for the production of evidence.[6]

Within 60 days of receipt of all of the evidence, the panel must render a written opinion. A majority of the panel must determine whether or not the health care provider complied with the appropriate standard of care. If it did not, the panel must determine whether or not the neglect was the proximate cause of injury. It may indicate that a material question of fact, which does not require expert opinion for its resolution, remains for judicial determination. In appropriate cases the panel may determine whether the claimant suffered any disability or impairment and its degree and extent.[7]

The panel's opinion is "admissible as evidence in any action subsequently brought by the claimant in a court of law, but such opinion shall not be conclusive."[8] Each side may call panel members as witnesses.[9] Each panel member is reimbursed for expenses and is paid $25.00 per day, to be borne by the parties in such proportions as may be determined by the panel chairman.[10] Finally, the state Chief Justice is empowered to promulgate all necessary rules and

---

2. *Davison v. Sinai Hospital of Baltimore, Inc.,* 617 F.2d 361 (4th Cir. 1980).

3. Virginia Code § 8.01–581.2.

4. Virginia Code § 8.01–581.3.

5. Virginia Code § 8.01–581.6(2).

6. Virginia Code § 8.01–581.6(3).

7. Virginia Code § 8.01–581.7.

8. Virginia Code § 8.01–581.8.

9. Virginia Code § 8.01–581.8.

10. Virginia Code § 8.01–581.10.

regulations to carry out the purpose of the legislation.[11]

There was a legislative finding that the high cost of medical malpractice insurance was beyond the means of some health care providers and that they were ceasing to render services. It was thought that passage of the Act would lower the cost of medical malpractice insurance, since the panel would weed out frivolous claims and would perform a mediation function with respect to other claims. In consequence of the panel's performance of these functions, it was believed that the amount of medical malpractice litigation would be substantially reduced, thus substantially lowering the cost of medical malpractice insurance.

## II.

The Act's notice requirement and provision for panel review at the instance of either party were so "intimately bound up" with the rights and obligations being asserted as to require their application in federal courts under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 63 (4th Cir. 1965). This is what we held, in effect, in *Davison v. Sinai Hospital of Baltimore, Inc.*, 617 F.2d 361 (4th Cir. 1980) *affg. Davison v. Sinai Hospital of Baltimore, Inc.*, 462 F.Supp. 778 (D.Md.1978). This, of course, accords with the great weight of decisions in the federal courts which have considered the question. *See Edelson v. Soricelli*, 610 F.2d 131 (3d Cir. 1979); *Hines v. Elkhart General Hospital*, 603 F.2d 646 (7th Cir. 1979); *Woods v. Holy Cross Hospital*, 591 F.2d 1164 (5th Cir. 1979); *Seoane v. Ortho Pharmaceuticals, Inc.*, 472 F.Supp. 468 (E.D.La.1979); *Wells v. McCarthy*, 432 F.Supp. 688 (E.D.Mo.1977); *Marquez v. Hahnemann Medical College & Hospital*, 435 F.Supp. 972 (E.D.Pa.1976); *Flotemersch v. Bedford County General Hospital*, 69 F.R.D. 556 (E.D.Tenn.1975); *See also* Alexander, *State Medical Malpractice Screening Panels in Federal Diversity Actions* (referred to hereafter as Alexander), 21 Ariz.

L.Rev. 959, 988–95 (1980), *but see Wheeler v. Shoemaker*, 78 F.R.D. 218 (D.R.I.1978), distinguished by the district judge in *Davison* because the reference requirement became effective only after the action had been commenced so that it seemed an adjunct of a state judicial proceeding, and Case Comment: *Mandatory State Malpractice Arbitration Boards and the Erie Problem: Edelson v. Soricelli*, 93 Harv.L. Rev. 1562 (1980).

## III.

The plaintiff levels his principal attack upon the provision that, at the trial, the panel opinion may be admitted into evidence. His reliance is upon *Byrd v. Blue Ridge Cooperative*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). Because of the presence of health care providers as members of the panel, he thinks the panel will be predisposed toward undue favoritism toward a defendant health care provider and that admission of the panel opinion into evidence will unduly influence the jury. It is true that the division of functions between court and jury in the United States District Court is a federal question and that there is a strong federal policy favoring the submission of all factual questions, except jurisdictional ones, to a jury. Should we apply a *Byrd* balancing test, however, the plaintiff points to no "affirmative countervailing federal consideration" which might be thought to outweigh the interest of the state in providing for the admission of the panel opinion. The same contention was rejected by the Court of Appeals for the Third Circuit in *Edelson v. Soricelli, supra*, 610 F.2d at 138–41. The contention that the jury may be influenced by the admission of the panel opinion is simply not an "affirmative countervailing federal consideration" within the meaning of *Byrd*. The *Edelson* court observed that findings of masters are admissible in jury trials of complex cases, F.R.C.P. 53(e)(3), while under Rule 704 of the Federal Rules of Evidence otherwise admissible opinion testimony is

---

**11.** Virginia Code § 8.01–581.11.

not excluded though "it embraces an ultimate issue to be decided." The panel opinion is only such opinion testimony which federal juries may receive and evaluate. Admission of such opinions is not without substantial federal precedence.

There is no exclusion of the jury as there was in *Byrd*. The panel opinion is admissible for the jury's consideration, but it is not conclusive. Panel members may be called as witnesses, and the jury is free to accept or reject the conclusion of the panel majority in light of all of the evidence before it.

In the absence of an affirmative countervailing interest such as that found by the Supreme Court in *Byrd*, as the Court of Appeals for the Third Circuit observed in *Edelson*, "we apply the traditional *Erie* formulation, emphasizing especially the policies of preventing forum shopping by nonresident plaintiffs and avoiding application of different law so as to discriminate against residents." 610 F.2d at 141. These policies support the application of the state rules here. It would be incongruous and injurious to the state's scheme to uphold the conditions precedent to suit while holding that the panel opinion was not admissible at trial. The parties would be encouraged to exert themselves but little in the panel proceeding, withholding their strongest evidentiary weapons for the later judicial proceeding. There would be a tendency for the panel review to become an empty condition precedent to litigation, presenting no meaningful opportunity for mediation and settlement. The consequence would be the promotion of forum shopping and an offer to federal diversity plaintiffs of an advantage not available to state court plaintiffs.

Though the provision for admission into evidence of the panel opinion be regarded as the resolution of an evidentiary problem, it does not follow that it is the kind of procedural rule which need not be followed in a federal court. It has been recognized that "there are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule . . . will be followed in order to give full effect to the state's substantive policy." 9 C. Wright & A. Miller, *Federal Practice and Procedure*: Civil § 2405 at 326–27 (1971). We recognized as much in *Szantay v. Beech Aircraft Corp., supra*, 349 F.2d at 63 (4th Cir. 1965) when we held that a state procedural rule must be followed in a diversity case if it is "intimately bound up with the state right or obligation." *See also Conway v. Chemical Leaman Tank Lines, Inc.*, 540 F.2d 837 (5th Cir. 1976).

█ The provision for admission of the panel opinion is intimately related to Virginia's alteration of the substantive cause of action. It is intimately related to Virginia's strong policy of encouraging and promoting pretrial mediation. Because it enforces and implements those interests, the admission provision is applicable in this diversity case.

### IV.

█ The plaintiff contends that the Act is an unconstitutional denial of equal protection. He relies upon *Graley v. Satayatham*, 74 O.O.2d 316, 343 N.E.2d 832 (Ct. Cmn.Pl.1976), in which a "strict scrutiny" analysis was employed. No fundamental right or suspect classification warranting strict scrutiny analysis has been identified. We agree with the Fifth Circuit that the rational basis test is the proper one. *Woods v. Holy Cross Hospital, supra*, 591 F.2d at 1172–75. *See also Seoane v. Ortho Pharmaceuticals, Inc., supra*, 472 F.Supp. at 471–72. The elimination of frivolous claims and the provision and promotion of mediation and settlement provide a rational basis for the legislation. The different treatment of medical malpractice plaintiffs from other tort plaintiffs is not a denial of equal protection, when the special problems posed by soaring insurance costs are considered.

█ In *Davison* we rejected a contention that an admission of the finding of the panel under the Maryland statute so invaded the province of the jury as to violate the Seventh Amendment right to a jury trial. Of course, we follow *Davison*. *See also Meeker v. Lehigh Valley R. Co.*, 236 U.S.

412, 35 S.Ct. 328, 59 L.Ed. 644 (1915); *Woods v. Holy Cross Hospital, supra,* 591 F.2d at 1177–81; *Seoane v. Ortho Pharmaceuticals, Inc., supra,* 472 F.Supp. at 473–74. *See also* Alexander, *supra,* at 1008–12.

The plaintiff has placed his reliance upon *Simon v. St. Elizabeth Medical Center,* 3 O.O.3d 164, 355 N.E.2d 903 (Ct.Cmn.Pl. 1976). We agree with the Fifth Circuit that *Simon* is aberrational. *Woods v. Holy Cross Hospital, supra,* 591 F.2d at 1180–81. The federal courts addressing the issue are unanimous in rejecting the Seventh Amendment challenge. *See* Alexander, *supra,* at 1011.

### V.

The plaintiff advances two pendent state claims.

■ Plaintiff contends that the Act violates Art. IV § 14(3) of the Virginia Constitution, which prohibits the enactment of any "local, special, or private law . . . [r]egulating the practice in, . . . or changing the rules of evidence in any judicial proceedings or inquiry before the courts or other tribunals . . . ." But the constitutional provision does not prohibit legislative classification, and a law may apply to a small class so long as the classification is reasonable and the law applies equally to all persons within the class. *Peery v. Virginia Bd. of Funeral Directors & Embalmers,* 203 Va. 161, 123 S.E.2d 94 (1961).

■ Finally, relying upon *Wright v. Central DuPage Hospital Assn.,* 63 Ill.2d 313, 347 N.E.2d 736 (1976), the plaintiff contends that the Act violates Art. VI § 1 of the Virginia Constitution which vests the judicial power in the Supreme Court and other courts established by the General Assembly. Since the panel members may administer oaths, issue subpoenas and render an opinion, it is said that the panel's function is a judicial one. We agree with *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, 63–67 (Ct.App.1978), in which, after *Wright* was considered, it was concluded that the "essence of judicial power is the final authority to render and enforce a judgment." The panel's opinion is binding upon no one.

### VI.

We conclude that the Act's provisions for prefiling notice, for panel hearing and for the admission into evidence of the panel's opinion during a subsequent trial *de novo* are to be applied in diversity actions in the district court, and that the complaint in this case was properly dismissed.

*AFFIRMED.*