PETER M. KLARFELD, ET AL.

V.

CARL SALSBURY, ET AL.

Record No. 840342

April 24, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell, and Thomas, JJ.

* Justice Cochran participated in the hearing and decision of this case prior to the effective date of his retirement on April 20, 1987.

*David C. Kohler (Michael W. Smith; Christian, Barton, Epps, Brent & Chappell,* on briefs), for appellants.

*Norman F. Slenker; Brian C. Shevlin; R. Harrison Pledger, Jr. (Benjamin W. Glass, III; Cynthia L. Vancil; Slenker, Brandt, Jennings & Johnston; Shevlin, Artz & Curtis,* on briefs), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this medical malpractice case, we limited the issues on appeal, adducing two questions for decision. The dispositive issue is whether the trial court erred in restricting the scope of the discovery deposition of a member of a medical malpractice review panel. The other issue is whether the trial court erred, when confronted with an objection on constitutional grounds, in admitting the panel's opinion into evidence at trial.

In December 1978, appellant Peter M. Klarfeld, 11 years of age, was treated for diabetes. Subsequently, the minor and his father, appellant Peter J. Klarfeld, claimed that appellees Carl Sals-

bury, a pediatrician; John Sabol, an endocrinologist; Judith Brown, a pediatric resident; and Arlington Hospital Association, operator of Arlington County Hospital, were negligent in their treatment of the child for the condition and that such negligence caused severe brain damage.

A medical malpractice review panel was convened at the request of the appellees pursuant to Code § 8.01-581.3. The panel was composed of two physicians, a hospital administrator, three attorneys, and a circuit judge who presided. Dr. James H. Stallings, Jr., was one of the physician members. After a hearing, the members of the panel signed a unanimous written opinion stating that the evidence did not "support a conclusion that Dr. Salsbury or Dr. Sabol or Dr. Brown or Arlington County Hospital failed to comply with the appropriate standard of care." In October 1981, the Klarfelds filed the present damage suit alleging medical malpractice, naming appellees as defendants.

Subsequently, counsel for plaintiffs sought to take the discovery deposition of Dr. Stallings for the stated purpose of asking about the deliberations of the malpractice review panel and not for the purpose of using Stallings as an expert witness in the trial. When the deposition commenced in August 1983, counsel for defendants objected, taking the position that a panel member could not be required to testify during discovery about panel deliberations. The deposition was suspended and plaintiffs sought a ruling from the trial court upon "the extent to which counsel for plaintiff can question Dr. Stallings concerning the basis of the panel's decision and the deliberative process of the panel."

After considering argument of counsel, the trial court sustained defendants' position and entered the following pretrial order, which generates the central issue on appeal:

"UPON CONSIDERATION of the motion of plaintiffs, to establish boundaries for the deposition of Dr. Stallings and a hearing thereon, and it being the opinion of the court that the deliberative process of the Medical Malpractice Review Panel being a matter in Executive session, it is hereby

ORDERED, that plaintiffs may not depose Dr. Stallings concerning any aspect of the deliberative process of the panel and may limit their questioning of the witness solely as to whether or not the decision reflects Dr. Stallings' vote."

During the course of the trial in September 1983, the panel's opinion was offered by a defendant and received in evidence, as provided by Code § 8.01-581.8, over plaintiffs' objection. This spawned the second issue on appeal. A jury found in favor of the defendants and we awarded the plaintiffs this appeal from the judgment order entered on the verdict in December 1983.

At the threshold, the parties disagree over the breadth of the pretrial order. The plaintiffs interpret the order broadly, saying it blocked "all pertinent avenues of questioning" and prevented them from "conducting any meaningful examination of Dr. Stallings, or any other panel member." The defendants construe the order narrowly, asserting it spoke only to the "deliberative process" and went no further.

None of the parties has attempted to define the phrase "deliberative process." As used in the order and in argument of counsel, we define "deliberative process" to mean that stage of the panel procedure when the members consider in private, and not in an open hearing, if any, the merits of the claim. The "deliberative process" includes, but is not limited to, statements of any kind made by any panel member during the private, "executive session" required by Rule Six (j)(13), Medical Malpractice Rules of Practice, Va. Code 1986 Replacement Volume 11, at 378 (Malpractice Rules).

We agree with the defendants that the pretrial order prohibited only interrogation about the deliberative process, given the context in which the issue was presented to the trial court. The avowed purpose of the deposition, as stated by plaintiffs' counsel, was to interrogate Stallings about the panel's deliberations. The trial court had only that narrow issue to decide. The court was not asked to decide if, for example, the plaintiffs properly could question Stallings about his individual, professional opinion, and the bases for such opinion, concerning whether defendants complied with the applicable standard of care. Therefore, we conclude that the order merely prohibited interrogation of Stallings "concerning any aspect of the deliberative process," in the language of the order. Further, in the last clause, the order permitted one question to be asked relative to the deliberative process, *viz.*, whether the panel's recorded decision accurately reflected Stallings' vote cast during the executive session.

Consequently, the scope of our inquiry on the main issue on appeal is limited. We must decide whether the trial court erred in

restricting the plaintiffs' right to depose Stallings pretrial about the deliberative process to the one question, or, stated differently, whether the plaintiffs should have been permitted to depose Stallings about other aspects of such process.

The plaintiffs contend that the trial court's limitation on the pretrial examination of panel members was contrary to law. Plaintiffs point to Code § 8.01-581.8, which provides,

"An opinion of the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the panel, except the chairman, as a witness. If called, each witness shall be required to appear and testify. The panelist shall have absolute immunity from civil liability for all communications, findings, opinions and conclusions made in the course and scope of duties prescribed by this chapter."

That statute was among the laws enacted by the General Assembly in 1976 which established the medical malpractice review system and which addressed, in the language of the enactment, "a significant problem adversely affecting the public health, safety and welfare" arising from "tort actions commonly referred to as medical malpractice cases." Acts 1976, ch. 611 at p. 784. Those statutes presently are codified in Title 8.01, Chapter 21.1, §§ 8.01-581.1 to -581.20.

The plaintiffs note that, under the foregoing statute, panel members, except the chairman, are required to appear and testify at trial if called by a party. They argue that the panel's opinion in this case bore on the ultimate issue at trial and, therefore, the "integrity" of that opinion was well within the scope of discovery permitted by the discovery rules of this Court. Rule 4:1(b)(1) provides for the examination of witnesses on matters "relevant to the subject matter involved in the pending action" which are "not privileged."

Additionally, plaintiffs argue, the last sentence of § 8.01-581.8 makes clear "that the trial court's severe restrictions on the scope of examination were improper." Plaintiffs contend that testimony by a panel member during discovery is "entirely insulated from attack" because the statute provides a panelist with absolute im-

munity from civil liability for any "communications, findings, opinions and conclusions" made in the course and scope of duties as a panel member. Thus, plaintiffs urge, a panelist should be required to give a discovery deposition about panel discussions.

The respective defendants take slightly different positions among themselves on this issue. Sobel, apparently assuming the General Assembly and not the Chief Justice promulgated the Malpractice Rules, *see* Code § 8.01-581.11, points out that such Rules require deliberations to be in "executive session." This provision, Sobel argues, makes it "clear . . . the legislature never intended that the deliberative process of a medical malpractice review committee [sic] would be the proper subject of discovery." If such an intention had existed, the argument goes, the most effective methods of accomplishing that objective would have been to provide for a court reporter to record the deliberations or to require deliberations to take place in public.

Additionally, Sobel notes that "witnesses" who happen to see, hear, or otherwise sense something which is relevant to an issue have always been under a statutory mandate to appear and testify (under Code § 8.01-407(A), "A summons may be issued . . . commanding the officer to summon any person to attend on the day and at the place that such attendance is desired. . ."), and to submit to discovery under Part Four of our Rules on practice and procedure. However, Sobel notes, in the medical malpractice statutes, the legislature saw fit to make a "specific provision [§ 8.01-581.8] for the appearance of a panel member at trial." From comparison of the two statutes, Sobel concludes that enactment of § 8.01-581.8 was not "a mere redundancy," but was "a legislative recognition that panel members are not 'witnesses' " in the true sense of that term and hence are not susceptible to discovery about the deliberative process.

The other defendants (taking a position with which Sobel, contrary to his appellate brief, disagreed during oral argument) seek to justify the trial court's limitation of discovery by relying on the provisions of Code § 8.01-581.17 read in conjunction with the provisions of Code § 8.01-581.16. We will italicize the pertinent parts of these statutes to highlight defendants' argument.

Section 8.01-581.17 deals with privileged communications and provides,

"The *proceedings*, minutes, records, and reports *of any medical staff committee, utilization review committee, or other committee as specified in § 8.01-581.16,* together with all communications, both oral and written, originating in or provided to such committees *are privileged communications which may not be disclosed or obtained by legal discovery proceedings unless a circuit court, after a hearing and for good cause arising from extraordinary circumstances being shown, orders the disclosure of such proceedings*, minutes, records, reports, or communications. Nothing in this section shall be construed as providing any privilege to hospital medical records kept with respect to any patient in the ordinary course of business of operating a hospital nor to any facts or information contained in such records nor shall this section preclude or affect discovery of or production of evidence relating to hospitalization or treatment of any patient in the ordinary course of hospitalization of such patient."

Section 8.01-581.16 deals with civil immunity and provides,

"*Every member of*, or health care professional consultant to, *any* committee, board, group, commission or *other entity shall be immune from civil liability for any act,* decision, omission, or utterance done or made in performance of his duties *while serving as a member of* or consultant to *such* committee, board, group, commission or *other entity, which functions primarily to review, evaluate, or make recommendations on* (i) the duration of patient stays in health care facilities, (ii) the professional services furnished with respect to the medical or dental necessity for such services, (iii) the purpose of promoting the most efficient use of available health care facilities and services, (iv) *the adequacy or quality of professional services*, (v) the competency and qualifications for professional staff privileges, or (vi) the reasonableness or appropriateness of charges made by or on behalf of health care facilities; *provided that such entity has been established pursuant to* federal or *state law* or regulation, or pursuant to Joint Commission on Accreditation of Hospital requirements, or established and duly constituted by one or more public or licensed private hospitals, or with a governmental agency and provided further that such act, decision,

omission, or utterance is not done or made in bad faith or with malicious intent."

The defendants, except Sobel, contend that § 8.01-581.17 provides that the proceedings and communications of certain committees are privileged and immune from discovery, unless disclosure is ordered by a circuit court judge. These defendants further argue that § 8.01-581.17 refers to § 8.01-581.16 for a determination of the entities falling within this privilege. They say that § 8.01-581.16 clearly covers a medical malpractice review panel because it refers to "any . . . other entity . . . which functions primarily to review, evaluate, or make recommendations on . . . the adequacy or quality of professional services . . . provided that such entity has been established pursuant to . . . state law." We disagree; the defendants have misconstrued the foregoing statutes.

On the one hand, § 8.01-581.17 provides a privilege in plain language which is limited narrowly to medical staff *committees*, utilization review *committees*, and other *committees* specified in § 8.01-581.16. Medical malpractice review *panels* are not mentioned in § 8.01-571.17.

On the other hand, § 8.01-581.16 provides a broad civil immunity, not a privilege from disclosure or discovery, for members of "any committee, board, group, commission or other entity . . . which functions primarily to review, evaluate, or make recommendations on" the subjects specified in the statute. Members of medical malpractice review panels arguably may be within the scope of § 8.01-581.16 and entitled to civil immunity because of the reference to "other entity." Nevertheless, the scope of § 8.01-581.17 is more limited. That statute is restricted to certain specified "committees," including by cross-reference those "committees" performing the functions set forth in § 8.01-581.16. Stated differently, § 8.01-581.17 does not include an "other entity" referred to in § 8.01-581.16 which is not a "committee."

█ To conclude that "panels" are cloaked with the § 8.01-581.17 privilege because of the "other entity" language of § 8.01-581.16 would be to rewrite § 8.01-581.17 and to add the term "panel," a term not included by the General Assembly. These two sections were parts of the 1976 Act, *supra*, which was passed to deal with the problems arising from medical malpractice claims. The Act referred to "panels" as well as other groups described by various terms. "When the General Assembly uses two different

terms in the same act, it is presumed to mean two different things." *Forst* v. *Rockingham Poultry Marketing Cooperative, Inc.*, 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981). If the legislature had intended to include medical malpractice "panels" within the privilege coverage of § 8.01-581.17, it would have so stated by the use of that term, not by the use of either a different term ("committee") or a cross-reference to a separate statute dealing with a different concept (immunity).

■ Moreover, the interpretation of § 8.01-581.17 urged by defendants brings that statute into direct conflict with § 8.01-581.8, which requires panel members, except the chairman, to appear and testify at the trial. Surely, the General Assembly would not have provided in one statute for testimony by a panelist and provided in another statute for a privilege from disclosure.

■ Furthermore, we are unpersuaded by the remaining contentions advanced by defendants on this issue, including the attempt to draw an analogy between malpractice panels and juries, whose deliberations generally are shielded from disclosure. *See Caterpillar Tractor Co.* v. *Hulvey*, 233 Va. 77, 353 S.E.2d 747 (1987). Unlike a jury's verdict, a malpractice panel's decision is only an opinion that becomes an item of evidence at the trial but is not conclusive. Code § 8.01-581.8; *Raines* v. *Lutz*, 231 Va. 110, 115, 341 S.E.2d 194, 197 (1986). And such item of evidence should be subject to scrutiny, just as any other piece of evidence, in order to test its probative value and credibility.

■ In addition, contrary to defendant Sobel's argument, the requirement of the Malpractice Rule that the panel deliberate in "executive session" does not support limiting discovery of those deliberations. That contention, if valid, would bring that Rule into conflict with the foregoing statutes. On the contrary, the Rule is consistent with the statutory scheme. It merely provides for the procedure to be followed at the conclusion of a hearing and for consideration of the merits of the claim to be in private. The Rule does not attempt to control the procedure to be followed during the subsequent legal action, which is governed by applicable statutes and Rules of practice and procedure.

Finally, we perceive no statutory "redundancy" which converts a panelist into a different breed of "witness" when called to testify at trial of the malpractice case. Section 8.01-581.8 merely deals with the special subject of medical malpractice and we do not construe it to somehow immunize a panelist from routine discovery.

■ Accordingly, we hold that the trial court erred in limiting the scope of the plaintiffs' questioning of Dr. Stallings pretrial by excluding interrogation about the panel's deliberative process. We conclude that a panelist may be questioned during discovery about, for example, the procedures followed by the panel in executive session, the testimonial and documentary evidence considered, the extent of deliberation, the professional qualifications of the deponent with reference to the issues involved in the claim, the reasoning employed by the deponent and the basis for his conclusion reached during deliberations, whether there were preliminary votes prior to the final vote, and the voting tally at each stage of deliberations. In summary, a party during pretrial deposition should be permitted to ask a panelist any question designed to test the probative value or credibility of the panel's opinion.

Therefore, this case must be reversed and remanded for the trial court's error in limiting discovery. Such limitation inhibited the plaintiffs' ability to prepare adequately for trial and diminished the plaintiffs' capacity to test the evidentiary force of the panel's opinion.

Because our conclusion on this issue decides the merits of this appeal, we do not reach the constitutional issue raised by introduction of the panel opinion as evidence at trial. That issue is whether Code § 8.01-581.8, permitting such introduction, violated the plaintiffs' due process rights and is invalid special legislation.

■ Firmly established in the field of constitutional law is the doctrine that a court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to the decision of the case on the merits. *Keller* v. *Denny*, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987); *Bissell* v. *Commonwealth*, 199 Va. 397, 400, 100 S.E.2d 1, 3 (1957); *Gayle and Eason* v. *Commonwealth*, 115 Va. 958, 961, 80 S.E. 741, 743 (1914). The reason for this rule is that "no questions can be brought before a judicial tribunal of greater delicacy than those which involve the constitutionality of a legislative act, [and] it is the part of wisdom and a just respect for the legislature not to question the constitutionality of its action if the case may be determined on other points." *Board of Supervisors of Henrico County* v. *Commonwealth*, 116 Va. 311, 312, 81 S.E. 112, 112 (1914).

■ The fact that this case will be remanded and that the constitutional issue possibly may arise again, if there is a retrial, does not dilute our obligation to adhere to the foregoing doctrine. In

*Gayle and Eason* v. *Commonwealth, supra,* convictions for violation of a liquor law were reversed on appeal and the case was remanded for further proceedings. This Court, invoking the foregoing doctrine, refused to rule on a constitutional issue in which defendants attacked the validity of a statute dealing with admission of evidence. We cannot say that a ruling on the constitutional issue in the present case is "absolutely necessary" at this time. There are many circumstances in which the constitutional question may not arise again in this case. For example, the case may be settled, or, if the case is tried, the panel opinion may not be offered in evidence, or the case may not be prosecuted to a conclusion for any number of reasons.

Accordingly, the judgment below will be reversed and the case will be remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

CARRICO, C.J., dissenting.

I would affirm the judgment of the trial court. I realize that, in taking this position, I must confront the constitutional question not reached by the majority. I would decide that question in favor of the validity of the medical malpractice review procedure.

The plaintiffs acknowledge that the procedure was held constitutional in *DiAntonio* v. *Northampton-Accomack Memorial,* 628 F.2d 287 (4th Cir. 1980). The plaintiffs say, however, that the court in *DiAntonio* "did not consider whether the possibility of bias inherent in malpractice review panels was a violation of due process."

It is true that the plaintiff in *DiAntonio* did not allege, and the court did not consider, any denial of due process. Rather, the plaintiff contended that the malpractice review procedure (1) works a denial of equal protection, (2) violates the Seventh Amendment right to trial by jury, (3) constitutes special legislation in violation of Art. IV, § 14(3) of the Virginia Constitution, and (4) usurps judicial power in violation of Art. VI, § 1 of the Virginia Constitution.

The court upheld the malpractice review procedure against all these attacks. I agree entirely with the court's holding, and I

would also uphold the procedure against the due process attack made here.

The plaintiffs' due process argument goes like this: A fair trial in a fair tribunal is a basic requirement of due process. Any tribunal trying cases must not only remain impartial but also avoid even the appearance of bias. Half the voting members of a malpractice review panel are health care providers whose interests are diametrically opposed to the interests of claimants in medical malpractice cases. Yet, the malpractice review procedure grants health care providers a substantial measure of adjudicatory control over malpractice claimants, offering the providers a possible temptation to decide cases against claimants. A panel decision reached in these circumstances of temptation and bias is the product of a constitutionally infirm decision-making process.

This argument is interesting, but the plaintiffs offer only speculation to substantiate their claim of inherent bias on the part of health care providers. To say as a matter of law that all health care providers are biased and therefore incapable of rendering fair decisions is to indict whole categories of professionals without any basis.

I would afford all members of malpractice review panels a presumption of honesty and integrity. And I would hold that until a claimant can demonstrate actual, rather than theoretical, bias, the presumption would prevail and the claimant would not be heard to complain about a denial of due process.

This brings me to the majority holding with which I disagree, *viz.*, that "the trial court erred in limiting the scope of the plaintiffs' questioning of Dr. Stallings pretrial by excluding interrogation about the panel's deliberative process." I would hold that the trial court did not err in limiting the discovery of Dr. Stallings' testimony. Indeed, I would hold that the plaintiffs had no right to discover Dr. Stallings' testimony at all.

I think two bases, singly or in combination, will support my view that no discovery of the testimony of malpractice review panel members is permissible. First, the panels are creatures of statute, completely and entirely. In creating the panels, the General Assembly was free, as long as it acted within constitutional limits, to use any form and to utilize any substance it saw fit. But the form in which the panels were established and the substance with which they were endowed mark the outer limits of how they and their membership may act and be treated.

In Code § 8.01-581.8, the General Assembly provided that any party "shall have the right to call, at his cost, any member of the panel, except the chairman, as a witness." As used in this context, the language "to call . . . as a witness," is a term of art meaning only one thing — to put a panel member on the witness stand in a trial on the merits of a medical malpractice case.

The General Assembly did not provide, as it could have provided, that a party has a right not only to call a panel member as a witness but also to subject the member to pretrial discovery. By use of the language, "except the chairman," the General Assembly effectively limited the panel members who may be called as witnesses. By use of the terminology, "call . . . as a witness," the General Assembly just as effectively limited a panel member's role to that of a witness at a trial on the merits of a medical malpractice case.

Second, Rule Six (j)(13), Medical Malpractice Rules of Practice, provides that, at the conclusion of a hearing, "the panel will deliberate in executive session." The obvious purpose of this Rule is to permit free discussion among panel members on the merits of a case in an atmosphere of confidentiality. This salutary purpose would be completely thwarted if, after a panel renders a decision, its members may be subjected to unlimited discovery and required to answer, in the words of the majority, "any question designed to test the probative value or reliability of the panel's opinion."

Such unlimited discovery will have detrimental practical effects. It is difficult, even in the best of circumstances, to enlist qualified health care providers and attorneys for service as members of malpractice review panels. With extensive discovery of the testimony of panel members now the order of the day, it will be well-nigh impossible to recruit enough qualified persons to make up panels.

Admittedly, we cannot let practical considerations affect the outcome of this case. But I think it is fair to assume that, when the General Assembly adopted the review panel procedure, it was aware of the danger in permitting discovery questioning of panel members and did not intend that such questioning should be allowed. I would give effect to that intention.

HARRISON, R.J., joins in dissent.