**Connie Jo WRAY, individually and as guardian ad litem of Jacob Wray, Plaintiff–Appellant,**

v.

**Paul J. GREGORY, M.D., Defendant–Appellee.**

No. 92–16985.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 17, 1994.

Decided Aug. 3, 1995.

Terry W. Mackey, Cheyenne, WY, for plaintiff-appellant.

Thomas Joseph Doyle, Schuering, Zimmerman, Scully & Nolen, Sacramento, CA, for defendant-appellee.

Before: REINHARDT and LEAVY, Circuit Judges, and LINDA HODGE McLAUGHLIN,* District Judge.

Per Curiam; Concurrence by District Judge McLAUGHLIN.

PER CURIAM:

The appellant Connie Wray arrived at the emergency room of St. Mary's Hospital in Reno, Nevada, on March 31, 1985, suffering from severe abdominal pain and low blood pressure. Wray was twenty-eight to twenty-nine weeks pregnant. As she was waiting in the emergency room, she went into shock.

---

* The Honorable Linda Hodge McLaughlin, United States District Judge for the Central District of California, sitting by designation.

Attending physicians diagnosed abruptio placenta, with severe fetal distress. Wray was immediately prepared for a caesarean section. The appellee, Dr. Paul Gregory, an anesthesiologist, was called from another delivery to administer anesthesia. Dr. Gregory was unable to locate his first choice anesthetic, Ketamine, within the few seconds available to him in this emergency situation, and instead used the anesthetic thiopental. The record indicates that approximately ninety percent of caesarean sections in this country are done under thiopental, but that Ketamine is preferred where the patient is in the initial stages of shock.

Approximately five to eight minutes after the administration of anesthesia, and after baby Jacob was delivered, Wray suffered a cardiac arrest. Although she was revived, she remained in a coma for five weeks. Both Wray and Jacob suffered brain damage.

Wray submitted her malpractice case to a medical-legal screening panel, as Nevada law requires. The panel found that there was no reasonable probability of medical malpractice by Dr. Gregory as to either Jacob or Connie Wray. Wray filed a diversity action in district court on behalf of herself and Jacob. In the jury trial, over Wray's objection, the court admitted the panel's findings as evidence. Also over Wray's objection, the district court gave a jury instruction required by Nevada statute. This instruction advised the jury that the screening panel's findings were based solely on a review of the medical records; that the jury should give the findings the same weight as other evidence; but that the findings were not conclusive.

The jury returned a verdict in favor of Dr. Gregory. Wray appeals the admissibility of the screening panel's findings and the propriety of the jury instruction relating to them.

## ANALYSIS

*The Screening Panel's Findings*

■ A plaintiff alleging medical malpractice is required by the Nevada medical malpractice statute, Nevada Revised Statute (NRS) §§ 41A.003–41A.120 (1986), to submit her case to a screening panel prior to filing the action in court:

No cause of action involving medical malpractice may be filed until the medical malpractice case has been submitted to an appropriate screening panel and a determination made by such panel as provided in NRS 41A.003 to 41A.069, inclusive, and any action filed without satisfying the requirements of those sections is subject to dismissal without prejudice for failure to comply with this section.

NRS § 41A.016(1).

NRS § 41A.049(1) sets out what the panel may consider and determine:

The screening panel shall consider all the documentary material, including the complaint and answer, any medical records and records of a hospital or office and the testimony of any expert witnesses the panel considers necessary, and shall determine only, *from that evidence,* whether there is a reasonable probability that the acts complained of constitute medical malpractice and that the claimant was injured thereby.

(Emphasis added.)

After considering "all the documentary material," the panel issues a finding as to whether or not there is a "reasonable probability of medical malpractice." Once the panel issues its finding, the complainant may then initiate a court action for malpractice. NRS § 41A.056(2). Although the screening panel's findings can be admitted as evidence in that court proceeding, other evidence concerning the panel's findings is not admissible. NRS § 41A.016(2).

A separate statutory provision dictates the form that the panel's findings must take. Under NRS § 41A.049(4)(b), a finding by the screening panel that there is no reasonable probability of medical malpractice must take "substantially the following form":

Based upon a review of the written medical records of this claim and the testimony of medical experts (if any were called) we find that there is no reasonable probability of medical malpractice[.]

Here, the panel's findings stated that "[b]ased upon a review of the written medical records we find there is no reasonable probability of medical malpractice."

Before determining the constitutionality of admitting the findings, we address the question whether they are admissible under the applicable evidentiary rules. That inquiry in turn requires us to resolve whether Nevada's rules regarding the admissibility of the findings or the Federal Rules of Evidence control. Although the Federal Rules of Evidence ordinarily govern in diversity cases, they do not always. "[W]here a state evidence rule is 'intimately bound up' with the rights and obligations being asserted, *Erie [R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) ] mandates the application of a state rule in a diversity suit." *See D'Orio v. West Jersey Health Systems,* 797 F.Supp. 371, 376 (D.N.J. 1992); *Conway v. Chemical Leaman Tank Lines, Inc.,* 540 F.2d 837, 839 (5th Cir.1976). Thus, even though the passage of the Federal Rules of Evidence in 1975 rendered the *Erie* analysis inapplicable to most evidentiary questions in diversity cases, it did not have the effect of supplanting *all* state law evidentiary provisions with federal ones. As Wright and Miller observe, some state law rules of evidence "in fact serve substantive state policies and are more properly rules of substantive law within the meaning of *Erie.*" 19 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4512, at 194–95 (1984). Other circuits have concluded that those provisions governing the admissibility of screening panel findings fall into that category.

For example, in *Daigle v. Maine Medical Ctr. Inc.,* 14 F.3d 684 (1st Cir.1994), the First Circuit concluded in an almost identical case that Maine's rules regarding the admissibility of findings by its medical malpractice screening panel were so "bound up with the state's substantive decision making" that, under *Erie,* the federal rules of evidence did not govern. *Id.* at 698. *Daigle* explained that "a refusal to give effect to the Health Act's evidentiary provisions would disserve *Erie* principles by undercutting *Erie*'s twin goals of discouraging forum shopping and eliminating inequitable administration of the law as between federal and state courts." *Id.* at 690.

Moreover, *Daigle* explained that a state's provisions governing the admissibility of medical malpractice screening panel findings do not unavoidably conflict with the Federal Rules of Evidence. "Since the [relevant] federal Evidence Rules ... do not seek to displace [the state's] policy of limiting frivolous malpractice suits, the federal rules and the state statute can peacefully coexist, each operating within its own sphere of influence." *Daigle,* 14 F.3d at 689. Accordingly, it concluded that the traditional *Erie* analysis applies to such state provisions, notwithstanding the Court's holding in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *Id.; see also Walker v. Armco Steel Corp.,* 446 U.S. 740, 749, 100 S.Ct. 1978, 1984–85, 64 L.Ed.2d 659 (1980) (explaining that in the absence of a conflict between a state and federal procedural rule, *Erie* applies).

The Fourth Circuit adopted a similar view in *DiAntonio v. Northampton–Accomack Memorial Hosp.,* 628 F.2d 287, 290 (4th Cir. 1980); *see also Peck v. Tegtmeyer,* 834 F.Supp. 903, 908–09 (W.D.Va.1992), *aff'd,* 4 F.3d 985, 1993 WL 341065 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 884, 127 L.Ed.2d 79 (1994) (same). *DiAntonio* explained that:

> though the provision for admission into evidence of the panel opinion be regarded as the resolution of an evidentiary problem, it does not follow that it is the kind of procedural rule which need not be followed in federal court.... The provision for admission of the panel opinion is intimately related to Virginia's alteration of the substantive cause of action. It is intimately related to Virginia's strong policy of encouraging and promoting pretrial mediation. Because it enforces and implements those interests, the admission provision is applicable in this diversity case.

*DiAntonio,* 628 F.2d at 291.

We agree with the reasoning set forth in *Daigle* and *DiAntonio. See also Heredia v. Johnson,* 835 F.Supp. 553, 553–54 (D.Nev. 1993) (applying Nevada's rules governing admissibility of screening panel's findings); *cf. Truck Ins. Exchange v. Tetzlaff,* 683 F.Supp. 223 (D.Nev.1998) (holding that Nevada's rule

requiring medical malpractice claims to be filed first with the screening panel applies in federal diversity cases). Nevada has established an integrated scheme for handling medical malpractice claims. The findings of the medical screening panel constitute a central feature of that scheme. It would make little sense for federal courts to follow state law in requiring plaintiffs to submit their claims to the state screening panel as a condition precedent to suit if they were then to disregard completely Nevada's carefully tailored rules regarding the use that may be made of the findings in court. As *Daigle* notes, such a practice would encourage forum shopping. Moreover, it would ignore the reality that the provisions concerning the admissibility of the panel findings are "intimately related to [Nevada]'s alteration of the substantive cause of action." *DiAntonio*, 628 F.2d at 291.

The fact that the findings considered in *Daigle* and *DiAntonio* were admissible under state law while, as we conclude below, the findings at issue here are inadmissible under Nevada law is of no moment. In requiring that parties bring their medical malpractice disputes before a screening panel as a condition precedent to instituting a court action, Nevada took pains to limit the evidentiary uses that could be made of those findings and to describe the form that they must take in order for them to be admissible. Nevada has an interest in ensuring that plaintiffs and defendants not use our diversity jurisdiction as a vehicle for subverting those evidentiary limitations. Moreover, that interest is "intimately related" to its interest in establishing a scheme for resolving medical malpractice disputes. Accordingly, we conclude that state law, and not the Federal Rules of Evidence, applies.

█ As a matter of state law, we conclude that the screening panel findings are inadmissible because they failed to mention the fact that, as appellee's counsel conceded at oral argument, the screening panel also considered affidavits from medical experts. Under NAC § 41A.050, the panel was free to consider the affidavits of medical experts in reaching its conclusions. However, the screening panel was not free to issue a find-

ing that made no mention of its reliance upon these expert affidavits and thus to suggest falsely that its conclusions were based only on written medical records.

NRS § 41A.049(4)(b) makes clear that when the panel relies on expert medical "testimony," it must make mention of that fact in its findings. As the state supreme court has pointed out, affidavits by medical experts constitute the chief form of expert opinion evidence upon which the screening panel relies. *See Jain v. McFarland*, 109 Nev. 465, 851 P.2d 450, 455 (1993) ("[T]he medical-legal screening panel usually receives medical records and affidavits from physicians, and not live testimony."). Given the statute's attempt to distinguish findings that are based on expert opinion as well as medical records from those that are based solely on medical records, it is reasonable to construe the statute to require as well that the screening panel mention the type of expert medical opinion that most often informs its judgments. Thus, even if the term "testimony" in NRS § 41A.049(4)(b) does not embrace "affidavits," we believe that the statute implicitly requires the screening panel to acknowledge its reliance upon expert medical opinion in the form of affidavits.

Moreover, *Jain* emphasized the importance of ensuring that the screening panel's findings are not "misleading" to the jury. *Id.* A construction of the statute which permitted the screening panel to omit its reliance on expert opinion in the form of affidavits would hardly be consistent with that teaching.

In addition, in 1989, the Nevada legislature amended NRS § 41A.049(4)(b) to substitute the phrase "all the materials submitted by the parties" for "written medical records." That change was clearly designed to ensure that the panel's findings did not erroneously suggest that they were based solely on medical records. Thus, the subsequent revisions to the statute demonstrate the legislature's continuing concern that the screening panel's findings accurately reflect the material considered.

Finally, nothing in the statute setting forth the form that the screening panel's findings must take precludes the panel from mention-

ing its reliance upon affidavits by medical experts. The statute expressly states that the panel's findings need only "substantially" follow the statutory language. Thus, the statute is not so rigid that it requires the screening panel to parrot the suggested script and thereby issue findings that contain a falsehood.

■ Because the findings' omission of any mention of the affidavits renders them statutorily inadmissible, we need not conclusively resolve any of the appellant's constitutional challenges to the screening panel and its findings. We do note, however, that in this case, the jury instructions only compounded the misleading nature of the screening panel's findings.

NRS § 41A.069 sets forth the jury instructions that "must" be given concerning the screening panel's findings. It provides two alternate instructions depending on whether the screening panel considered "testimony of a medical expert." In cases in which medical expert "testimony" was considered, the required instruction reads as follows:

> During the course of this trial certain evidence was admitted concerning the findings of a screening panel. The findings of the panel were based upon a review of medical records and the testimony of a medical expert based upon his review of those records. These findings are to be given the same weight as any other evidence, but are not conclusive of your determination of the case.

*Id.* In cases in which medical expert "testimony" was not considered, the required jury instruction reads as follows:

> During the course of this trial certain evidence was considered concerning the findings of a screening panel. *The findings of the panel were based solely upon a review of the medical records.* These findings are to be given the same weight as any other evidence, but are not conclusive on your determination.

*Id.* (emphasis added).

Here, the district court gave the latter instruction. Whether or not affidavits by medical experts constitute "testimony" for purposes of the statute, the statute cannot be read to require the court to provide the jury with a misleading instruction. *See Hock v. New York Life Ins. Co.,* 876 P.2d 1242, 1258 (Col.1994) ("An instruction which misleads or confuses the jury amounts to error."); *Shane v. Rhines,* 672 P.2d 895, 901 (Alaska 1983); *Crossen v. Skagit County,* 669 P.2d 1244 1247 (Wash.1983). Thus, where, as here, the panel's findings are based in part on the consideration of the opinion of medical experts in the form of affidavits, the jury may not be erroneously instructed that the screening panel's findings were based "solely" on a review of medical records.

■ Moreover, we are far from certain that the court's instruction to the jury that it weigh the screening panel's findings as it would "any other evidence" fully safeguards the parties' rights to a jury trial under the Nevada Constitution or to due process under the federal constitution. Findings in the form of a conclusion by a panel of experts that medical malpractice has or has not occurred are not "the same as any other evidence." The evidence is unique both because it purports to provide a determination of the central issue before the jury and because, unlike the live testimony of an expert witness, it is not subject to cross-examination.

Given the particular hazards posed by this evidence and the fact that the court is not limited to telling the jury only what is set forth in the mandatory instruction, a judge would be well advised to supplement that instruction. In this regard, we believe it would be appropriate for a court to point out that because the screening panel inquiry constitutes only "a summary process" and because Nevada law precludes the jury from inquiring into that process, the jurors should not give undue weight to the panel's findings. *Jain,* 851 P.2d at 455. Thus, although this is not the occasion in which to determine conclusively what instructions would be constitutional, we note that the court should instruct the jury in a manner that will ensure that the evidence of the outside panel's conclusions does not "interpose [an] obstacle to a full contestation of all the issues, and take[ ] [a] question of fact from ... the jury." *Meeker v. Lehigh Valley R.R. Co.,* 236 U.S. 412, 430, 35 S.Ct. 328, 335, 59 L.Ed. 644 (1915). *See*

*Bolden v. Nevada,* 97 Nev. 71, 624 P.2d 20 (1981); *Drummond v. Mid–West Growers Cooperative Corp.,* 91 Nev. 698, 542 P.2d 198, 207 (1975) ("the 'right to a jury trial' [is] the right to have factual issues determined by a jury").[1] Reliance on the statutorily mandated instructions alone will not necessarily accomplish that end.

## CONCLUSION

In this instance, because the statutory procedure was not followed, the findings of the medical-legal screening panel must be excluded upon our remand of this case for retrial. Because the findings have no evidentiary value, they do not provide a basis for an award of attorneys' fees in favor of Dr. Gregory, nor should any bond posted by Wray in accordance with NRS § 41A.056(2) be forfeited.[2]

There is no merit to the Wrays' argument regarding the other instruction, the "error in judgment instruction." At oral argument, counsel for the Wrays conceded that this instruction contained no erroneous statement of law. Consequently, there is no prejudice. *See In re Asbestos Cases,* 847 F.2d 523, 524 (9th Cir.1988).

**REVERSED and REMANDED** for retrial in accordance with this opinion.

McLAUGHLIN, District Judge, concurring:

I concur with the result in the per curiam opinion. However, I write separately because I conclude that the Federal Rules of Evidence, rather than Nevada state law, control the admission or exclusion of the screening panel's findings.

---

**1.** We note that a similar statute in Arizona, ARS § 12–567(M), requires that "[t]he jury shall be instructed that the conclusion of the panel shall not be binding but *shall be accorded such weight as they choose to give it." Id.* (emphasis added). The Arizona Supreme Court concluded that this provision did not violate the state constitution's jury trial right. *See Eastin v. Broomfield,* 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977) (en banc).

**2.** NRS § 41A.056(2) provides:
If the determination [of the screening panel] is not in favor of the claimant, the claimant may

## I.

The district court admitted the screening panel's findings solely on the basis of the Nevada medical malpractice statute, NRS §§ 41A.003–41A.120. Because the district court did not consider the Federal Rules of Evidence, we should do so. *See United States v. Breitkreutz,* 8 F.3d 688, 692 (9th Cir.1993).

The screening panel's findings appear to be relevant.[1] However, as shown in the per curiam opinion, the findings did not comply with state law. Therefore, the screening panel's findings, made in contradiction to statutory mandate and introduced without a possibility of challenge as to their bases or explanation as to their context, are so unduly prejudicial, misleading, and lacking in probative value that they must be excluded under Fed.R.Evid. 403.

## II.

The per curiam opinion applies the doctrine of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to hold that NRS § 41A.016(2) controls the admission or exclusion of the findings. I respectfully disagree. Both the Rules of Decision Act and the *Erie* case decided thereunder provide an exception for Acts of Congress. 28 U.S.C. § 1652; *Erie,* 304 U.S. at 78, 58 S.Ct. at 822.

The Federal Rules of Evidence were enacted directly by Congress on January 2, 1975. Pub.L. No. 93–595, § 1, 88 Stat. 1929–1948 (1975). If a Federal Rule of Evidence covers a point in dispute, Congress has mandated that such Rule be followed. Fed.R.Evid. 101; *Gibbs v. State Farm Mutual Ins. Co.,* 544 F.2d 423, 428 n. 2 (9th Cir.1976). "[The Federal Rules of Evidence's] validity

---

file an action in court after posting a $5,000 bond or its equivalent with the division pending a final adjudication on the merits. If the claimant does not obtain a judgment in his favor in court, the bond is forfeited, and the money must be deposited in the account for the screening panels.

**1.** The findings also may be hearsay. Fed.R.Evid. 801. However, the record on appeal is not sufficiently complete to determine whether the public record exception applies. Fed.R.Evid. 803(8).

*vis-a-vis* state law and the principles of the Erie doctrine stands on even firmer ground than that of the Rules of Civil Procedure. They are not subject to the Rules of Decision Act or (unlike the Rules of Civil Procedure) to the Rules Enabling Act." 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4512 at 192–93 (2d ed.1982). In *Daubert v. Merrell Dow Pharmaceuticals,* —— U.S. ——, —— n. 6, 113 S.Ct. 2786, 2794 n. 6, 125 L.Ed.2d 469 (1993), a diversity case from California, the Supreme Court stated that because the Court based its discussion "on the content of the congressionally-enacted Federal Rules of Evidence," it did not need to address the *Erie* doctrine.[2]

Therefore, the Federal Rules of Evidence are not subject to the Rules of Decision Act or to *Erie.*

### III.

The per curiam opinion decides, in accord with the reasoning of *Daigle v. Maine Med. Ctr.,* 14 F.3d 684 (1st Cir.1994), that the Nevada statute is substantive and, because an evidentiary rule is integrated in the statute, the rule becomes one of substantive law.

*Daigle* depends on the fact that the Maine statute "peacefully coexist[s]" with the Federal Rules of Evidence. *Id.* at 689. Likewise, in this case, the findings are excludable under either state or federal law. However, there may be instances where Nevada's medical malpractice statute conflicts with the Federal Rules of Evidence. For example, the Nevada statute requires not only that the screening panel's findings be admitted, but also that other evidence concerning the findings be excluded. NRS § 41A.016(2). That rule of exclusion directly conflicts with Fed. R.Evid. 106. In addition, if the findings had complied with statutory mandate, they would be admissible under state law, but under federal law would be excluded as hearsay unless an exception applies. *See supra* note 1.

### IV.

Certainly, Nevada's medical malpractice statute contains some substantive law. However, the Federal Rules of Evidence should not be supplanted by state evidentiary rules for that reason, especially when the Federal Rules are on point. *Gibbs, supra.*

An example illustrates this point. Tort reform proposals often include restricting the admissibility of scientific evidence by plaintiffs. *E.g.,* Dan Quayle, *Civil Justice Reform,* 41 Am.U.L.Rev. 559, 565–67 (1992). In *Daubert,* the Supreme Court held that the Federal Rules of Evidence exclusively control the admissibility of scientific evidence in federal courts. —— U.S. at ——, 113 S.Ct. at 2793; *see* Hao–Nhien Q. Vu & Richard A. Tamor, Recent Development, *Of* Daubert, *Elvis, and Precedential Relevance: Live Sightings of a Dead Legal Doctrine,* 41 UCLA L.Rev. 487, 499 (1993).

Suppose a state enacts a tort reform package that includes limitations on the admission of scientific evidence. Under the approach endorsed by the per curiam opinion, the entire tort reform statute would be considered substantive, and federal courts in that state hearing tort cases based on diversity jurisdiction would be required to conduct an *Erie* analysis before ruling on the admissibility of scientific evidence. This result is untenable. District courts should need to rely only on *Daubert* and rule based on the Federal Rules of Evidence.

Likewise, the fact that the Nevada evidentiary rule at issue was integrated into the Nevada medical malpractice statute should not require the district courts in Nevada to determine the admissibility of evidence on any basis other than the Federal Rules of Evidence.

---

**2.** At that time, and even now, California courts apply the *Kelly/Frye* rule. *People v. Leahy,* 8 Cal.4th 587, 598–604 (1994) (citing *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923); *People v. Kelly,* 17 Cal.3d 24, 130 Cal.Rptr. 144, 549 P.2d 1240 (1976)).