**Shelby Marie Wetzel LEE, an infant, by her mother and next friend, Dorothy Lynn WETZEL, et al., Plaintiffs,**

**v.**

**ALLEGHANY REGIONAL HOSPITAL CORPORATION, et al., Defendants.**

**Civ. A. No. 89–0419–R.**

United States District Court, W.D. Virginia.

March 25, 1991.

C. Richard Cranwell, Cranwell & Moore, George W. Wooten, Fox, Wooten & Hart, Roanoke, Va., William T. Wilson, Wilson & Associates, Covington, Va., for plaintiffs.

John T. Jessee, Woods, Rogers & Hazlegrove, Roanoke, Va., Roy W. Ferguson, Jr., Wharton, Aldhizer & Weaver, Harrisonburg, Va., Michael McHale Collins, Collins, Crackel & Mooney, Covingston, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

This matter is before the Court on defendant Alleghany Regional Hospital's motion to dismiss or reduce *ad damnum* plaintiffs' complaint.[1] Briefly summarized, plaintiffs' complaint alleges, *inter alia,* that Dorothy Wetzel and her daughter, Shelby Marie, suffered injuries as a result of defendants' failure to stabilize or transfer Ms. Wetzel immediately, as required by the Emergency Medical Treatment and Active Labor Act (Act), 42 U.S.C. § 1395dd (1988). Ms. Wetzel arrived at Alleghany Regional Hospital (Hospital) experiencing severe stomach pains and high fever. At the time, she was six months pregnant.

---

1. Plaintiffs are Shelby Marie Wetzel Lee, an infant; Dorothy Lynn Wetzel, the infant's mother; and Milton Byrle Lee, the father.

She was misdiagnosed as requiring an appendectomy, which was performed immediately. However, the operation caused her to go into preterm labor. Plaintiffs allege that during the four days which elapsed between the time of the appendectomy and Ms. Wetzel's transfer to a better equipped hospital, she was not "stabilized" as required by the Act. Consequently, Ms. Wetzel and Shelby Marie suffered injuries as a result of Shelby's premature birth. Plaintiffs seek over fourteen million dollars in damages.

Defendant Hospital has filed a motion to dismiss and in support, asserts several theories:

(1) Plaintiffs' complaint fails to state a claim because it does not contend that indigency was the motivating factor behind the hospital's alleged failure to comply with the Act;

(2) Plaintiffs have not stated a claim because the transfer of the Ms. Wetzel to another hospital complied with § 1395dd(c)(1)(A), in that the benefits of the transfer outweighed the risks, and;

(3) Even if plaintiffs have stated a valid cause of action under § 1395dd, the recoverable damages are limited by Virginia's statutory cap on medical malpractice recoveries.

The parties have briefed the issues fully and the Court has heard oral argument; accordingly, the matter is ripe for disposition. The Court's jurisdiction is founded upon 28 U.S.C. § 1331 (1988), as a federal statute is involved.

## A. FAILURE TO ALLEGE INDIGENCY

■ Defendant asserts that plaintiffs' complaint is insufficient because it does not allege that defendant's conduct was motivated by economic factors. Defendant contends that § 1395dd was intended to apply only to indigent patients who are refused treatment because of their economic status. In support, defendant cites three federal district court decisions which have held that the Act was intended to apply only to cases in which a hospital's actions are motivated by a person's indigency. *Stewart v.*

*Myrick, M.D.,* 731 F.Supp. 433 (D.Kan. 1990); *Evitt v. University Heights Hosp.,* 727 F.Supp. 495 (S.D.Ind.1989); *Nichols v. Estabrook, M.D.,* 741 F.Supp. 325 (D.N.H.1989).

■ The Court is unpersuaded by the decisions and declines to adopt their reasoning. The opinions are founded upon an interpretation of Congress's intent, based solely upon the Act's legislative history. However, it is not the job of this Court to rewrite a statute, based upon legislative history, when the plain words are unambiguous. *See United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961). The Court concurs with the decisions of three other federal courts which have determined that a plaintiff may state a claim under the Act without alleging that the denial of treatment was based upon the inability to pay. *Cleland v. Bronson Health Care Group,* 917 F.2d 266, 270 (6th Cir.1990); *Deberry v. Sherman Hosp. Ass'n,* 741 F.Supp. 1302, 1305–07 (N.D.Ill.1990); *Delaney v. Cade,* 756 F.Supp. 1476 (D.Kan.1991) (1991 WEST-LAW 10328). As the *Cleland* court observed:

> The benefits and rights of the statutes extend "to any individual" who arrives at the hospital. The ambiguous words that do exist: ("appropriate" and "stabilize") do not serve to exclude completely any person from the coverage of the Act.

917 F.2d at 269. The statute is written plainly and does not contain any language that can reasonably be construed as limiting its application to indigents. "It may go further than what Congress contemplated, but that is not a reason to distort or excise the words that Congress wrote." *Id.* at 270. The Court cannot, and will not, rewrite a statute, based solely on legislative history, in the absence of any ambiguity.

Thus, plaintiffs' claim will not be dismissed for failure to allege that indigency was a motivational factor behind the Hospital's alleged misconduct.

## B. COMPLIANCE WITH THE ACT

■ As an alternative ground for dismissal, defendant asserts that the Hospital

fully complied with the Act, and thus, the complaint should be dismissed. Defendant asserts that plaintiffs' cause of action, if any, should be a state law medical malpractice claim, because the Act was not intended to apply to the present situation.

Under the Federal Rules of Civil Procedure, the allegations of a complaint must be construed liberally, and "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Although the Court has some grave reservations about the viability of plaintiffs' claim under the Act, the motion to dismiss is denied. In light of the facts that the Court has heard, the Court would be inclined to rule that defendant Hospital did comply with the Act's requirement that the patient be stabilized. However, the Court is compelled to deny the motion to dismiss because viewing the complaint's allegations in the light most favorable to plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), plaintiffs have stated a claim.

The crux of plaintiffs' allegations is that defendants admitted Ms. Wetzel to the hospital, but never, prior to her departure four days later, stabilized or transferred her as required by the Act.

The Act defines "to stabilize" as "such medical treatment of the condition as may be necessary to assure, *within reasonable medical probability*, that no material deterioration of the condition is likely to result. . . .". 42 U.S.C. § 1395dd(e)(4)(A) (emphasis added). Plaintiffs claim that defendants failure to act resulted in a material deterioration of Ms. Wetzel, thus violating the Act. Clearly, there is a factual question as to whether the Hospital's actions satisfied the Act's stabilization requirement.

As stated above, the definition of "to stabilize" asks whether the medical treatment and release was reasonable under the circumstances. This is obviously a factual inquiry which may not be decided on a motion to dismiss.

*Deberry*, 741 F.Supp. at 1305.

Accordingly, the Court must deny the motion to dismiss. Clearly, defendant may file a motion for summary judgment, supported by the appropriate medical evidence, at a later time.

## C. MOTION TO REDUCE AD DAMNUM

■ Finally, defendant Hospital asserts that even if plaintiffs may recover under 42 U.S.C. § 1395dd, the recovery is limited by Va.Code Ann. § 8.01–581.15 (1984), which imposes a one million dollar ($1,000,000) statutory cap on medical malpractice recoveries. Defendant argues that subsection (d)(3)(A) of the Act, which states that individual plaintiffs can "obtain those damages available for personal injury under the law of the State in which the hospital is located," explicitly incorporates the damage limit imposed by § 8.01–581.15.

■ There is relatively little case law addressing this issue. In *Reid v. Indianapolis Osteopathic Medical Hosp.*, 709 F.Supp. 853 (S.D.Ind.1989), the district court held that the Indiana medical malpractice statute, which limits damages, applies to actions brought under the Act. In reaching this conclusion, the court observed that many states had limits on medical malpractice damages, but no state has a law which limits all personal injury damages. If plaintiffs' contention were accepted and the "personal injury" clause of (d)(3)(A) were applied only to state statutes that apply to *all* personal injury recoveries, rather than only medical malpractice recoveries, subsection (d)(3)(A) would be inapplicable in all fifty states. 709 F.Supp. at 855.

The plaintiff urges that section 1395dd(d)(3)(A) only incorporates those state laws that limit damages available for "personal injury" in general; but, at oral argument, the plaintiff was unable to cite a single state with a statute that generally limited personal injury damages. In other words, the plaintiff

wishes the court to read the damages limitation clause of section 1395dd(d)(3)(A) as in fact providing no limitation whatsoever. By contrast, when Congress drafted section 1395dd(d)(3)(A), it was clearly aware of a growing concern in some states that excessive damage awards were fueling a medical malpractice "crisis."

*Id.*

■ This Court also has been unable to discover any state statute which generally limits all personal injury damages. It is a fundamental rule of statutory construction that a statute should not be construed in manner which renders certain provisions meaningless or insignificant. *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 970–71 (5th Cir.1981); *Zeigler Coal Co. v. Kleppe*, 536 F.2d 398, 406 (D.C.Cir.1976). Plaintiff's interpretation of the Act would render subsection (3)(A) meaningless, and thus must be rejected.

■ In Virginia, the medical malpractice recovery of "a patient shall not exceed one million dollars." § 8.01–581.15. A "patient" is defined as "any natural person who receives or should have received health care...." § 8.01–581.1(3). Recently the Virginia Supreme Court decided how this limit applies to a medical malpractice suit brought by a mother, newborn child, and father. *Bulala v. Boyd*, 239 Va. 218, 389 S.E.2d 670 (1990). The court concluded that a mother and her newborn child are separate "patients", and thus, each may recover a maximum of one million dollars. 239 Va. at 229, 389 S.E.2d at 675–76. However, a father seeking damages for emotional harm and medical expenses, resulting from the malpractice to the mother and child, may not recover separately. The father's claims for emotional distress and medical expenses are derivative of the child's, and thus fall within the child's statutory cap. 239 Va. at 230, 389 S.E.2d at 676.

## CONCLUSION

In summary, defendant's motion to dismiss plaintiffs' claims under the Act are denied. However, defendant's motion to reduce *ad damnum* is granted; plaintiffs' total maximum recovery under the Act shall not exceed two million dollars.