**Barbara JACKSON, Plaintiff,**

v.

**EAST BAY HOSPITAL,
et al., Defendants.**

**No. C–96–03276 MHP.**

United States District Court,
N.D. California.

Oct. 6, 1997.

Richard J. Massa, Massa & Associates, Lakeport, CA, plaintiff.

James R. Ritchie, McGlynn, McLorg & Ritchie, San Francisco, CA, Erin R. Sabey, Anderson, Galloway & Lucchese, Walnut Creek, CA, Matthew F. Miller, Lynch, Gilardi & Grummer, Peter B. Logan, Wright, Robinson, McCammon, Osthimer & Tatum, San Francisco, CA, John S. Gilmore, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, CA, for defendants.

### OPINION

PATEL, District Judge.

Plaintiff Barbara Jackson brings this action under the Emergency Medical Treatment and Active Labor Act of 1986 ("EMTALA"), 42 U.S.C. section 1395dd, state law and 42 U.S.C. section 1983, for damages arising from the wrongful death of and personal injury to her husband, Robert Jackson. Plaintiff and defendants have filed cross-motions for partial summary judgment on the applicability of state law damages restrictions to plaintiff's claim. Also before the court is defendant Steele's motion for judgment on the pleadings as to the EMTALA and section 1983 actions brought against him.

Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following opinion.

### BACKGROUND

Plaintiff, decedent Robert Jackson's wife Barbara, brings this action making common law claims and claims under state and federal law. At the time of this incident, decedent had a history of psychiatric problems and was taking prescribed antipsychotic medication. Plaintiff claims that during the peri-

od of March 31 through April 4, 1996, Mr. Jackson presented himself for care three times at Redbud Hospital Emergency Department. Plaintiff contends that he was having delusions, but also had other "alarming" physical symptoms which went untreated, because "[h]e was simply labeled as a psychiatric problem." Plaintiff's Memorandum of Points and Authorities In Support of Motion For Partial Summary Judgment at 2.

On his third visit [1], Mr. Jackson was given Haldol, an antipsychotic medication which plaintiff claims was contraindicated in light of his physical symptoms and "the known but unappreciated, fact that he was also taking Anafranil." *Id.* Plaintiff claims that the combination of these two medications can and did cause arrhythmia and sudden death.

Plaintiff further alleges that apart from his mental condition, Mr. Jackson was in an unstable medical condition, and did not receive the appropriate medical screening examination as required by EMTALA. While at Redbud, he was seen by the Lake County Mental Health Department which determined that he should be involuntarily committed pursuant to California Welfare and Institutions Code section 5150. He then was transferred to East Bay Hospital.

Plaintiff contends that a psychiatrist at East Bay prescribed additional Haldol without a physical examination, and that approximately half an hour later Mr. Jackson ceased breathing and went into cardiac arrest. Plaintiff asserts that several doctors and nurses witnessed this event, but rather than providing the required standard treatment of an acute care hospital, they transferred Mr. Jackson to Brookside, in violation of EMTALA. Mr. Jackson allegedly died approximately thirty-eight minutes after cardiac arrest commenced.

In her second amended complaint ("complaint"), plaintiff seeks damages and injunctive relief arising from the death of her husband due to the alleged negligent treatment at defendant hospitals, and violation of strict liability statutes. Plaintiff claims relief under common law, California Health and Safety Code section 1317, *et seq.,* 42 U.S.C. section 1395dd (EMTALA), and 42 U.S.C. section 1983.

In a status conference on March 7, 1997, the court requested that the parties brief the issue of whether state law applies to plaintiff's damages claims under EMTALA. In response, defendant Redbud Community Hospital District ("Redbud") submitted a motion on May 8, 1997, which defendants Adventist Health, Inc. ("Adventist") and Miguel M. Ollada, M.D., later joined, asserting the applicability of a $250,000 damages cap under California Civil Code section 3333.2 (Medical Injury Compensation Reform Act of 1975) ("MICRA") to the EMTALA claim.

On May 9, 1997, defendant East Bay Hospital ("East Bay") submitted a separate motion asserting the applicability of the MICRA damages cap, as well as state limitations on punitive damages pursuant to California Code of Civil Procedure sections 425.13 and 377.61. Defendant doctors Steele and Ollada also brought respective motions on May 12 and May 9, 1996 for judgment on the pleadings and a motion to strike, asserting that the punitive damages claims should not be permitted due to plaintiff's non-compliance with section 425.13 and California Civil Code section 3294. Steele also moves for judgment on the pleadings as to plaintiff's claims against him under EMTALA and section 1983.

Plaintiff filed a motion on June 25, 1997 for partial summary judgment and opposition to defendant Redbud and East Bay's prior motions, and later submitted replies to defendants Steele and Ollada's motions. The court considers the motions regarding the state law damages cap and punitive damages motions to be cross-motions for partial summary judgment as to the application of state law to plaintiff's claims.

## LEGAL STANDARDS

### I. *Summary Judgment*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against

---

**1.** Plaintiff asserts that Mr. Jackson was briefly examined and sent home during the first two visits to Redbud.

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (the nonmoving party may not rely on the pleadings but must present significant probative evidence supporting the claim); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The court's function, however, is not to make credibility determinations, *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.,* 809 F.2d at 631.

### II. *Judgment On The Pleadings*

A motion for judgment on the pleadings is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Fed.R.Civ.P. 12(c); *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1990). In reviewing a motion under Rule 12(c), the court must assume that the facts alleged by the nonmoving party are true and must construe all inferences drawn from those facts in favor of the nonmoving party. *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989), *cert. denied,* 493 U.S. 1079, 110 S.Ct. 1134, 107 L.Ed.2d 1039 (1990). The court need not assume the truth of legal conclusions in the complaint merely because they take the form of factual allegations. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), *cert. denied,* 454

U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

### DISCUSSION

The first issue before the court is the extent to which skate damages law is applicable to an EMTALA personal injury claim. In contention is the application of the MICRA $250,000 damages cap on claims against health care providers.

This matter is one of first impression in this Circuit. As such, the court will determine the more abstract question of the nature and extent of EMTALA incorporation of state damages law, and then consider whether the specific state damages law—in this case, MICRA—applies to an EMTALA claim. This opinion is supported by the small but consistent body of case law on this issue in other courts.

Also at issue is the application of state punitive damages requirements to plaintiff's state and federal claims. This decision resolves whether Code of Civil Procedure section 425.13 and Civil Code section 3294 are applicable to a pendent state claim in federal court.

Lastly, the decision will determine whether defendant Steele may be granted summary judgment on two issues: 1) whether plaintiff may bring an EMTALA claim against an individual physician; and 2) whether defendant's actions as a private physician working in a private hospital are considered to be actions under "color of law" pursuant to section 1983.

### I. *EMTALA Incorporation of State Damages Law*

EMTALA, also referred to as the "anti-patient-dumping" statute, was created because Congress "was concerned that hospitals were 'dumping' patients who were unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized." *Eberhardt v. City of Los Angeles,* 62 F.3d 1253, 1255 (9th Cir.1995).

EMTALA establishes federal requirements for medical screening, stabilizing treatment, and restriction of transfers until the patient is stabilized. 42 U.S.C.

§ 1395dd(a)–(c). When a hospital is found to be in violation of EMTALA, the statute provides civil money penalties and creates a private cause of action against the offending hospital. 42 U.S.C. § 1395dd(d). The injured individual may "obtain those damages available for personal injury under the law of the state in which the hospital is located." 42 U.S.C. § 1395dd(d)(2)(A). EMTALA clearly incorporates state law in the determination of damages.

The extent of that incorporation lies at the crux of plaintiff's argument. Plaintiff asserts that Congress intended to apply the broader general state provisions for personal injury damages, and not the more specific provisions of MICRA, which only apply to negligence claims against health care providers. Defendants, on the other hand, contend that the language of the statute was left open as an invitation to a broader interpretation which would permit application of MICRA.

Plaintiff alternatively asserts that even if the court finds that EMTALA permits the damages cap, MICRA is nevertheless inapplicable to the claim under state law.

### A. *California Tort Law*

The relevant state law, California general tort law, states that "the measure of damages, *except where otherwise expressly provided by this Code,* is the amount which will compensate for all the detriment proximately caused thereby." Cal. Civ.Code § 3333 (emphasis added). More specifically, section 3333.2 (MICRA), provides that in "any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to" no more than $250,000 for non-economic losses. Cal. Civ. Code § 3333.2(a) & (b).

Before a more detailed examination of EMTALA state damages law incorporation and intent, it is important to note that plaintiff is incorrect in her narrow construction of the MICRA damages cap as strictly outside the scope of California general torts law. Section 3333 implicitly includes the MICRA

damages cap when it provides for exceptions "expressly provided by this Code." Cal. Civ. Code § 3333. Section 3333.2 is just such an exception expressly included within the Code, a fact which plaintiff chooses to overlook.

However, since this is an issue of first impression, the court looks to the broader issue of EMTALA's incorporation of state law and then to the issue of the application of the specific provisions of the MICRA cap.

### B. *The Scope of EMTALA Incorporation of State Law*

Both parties assert contradictory readings of the EMTALA damages provision. As the court sees nothing in the plain language of the provision indicating whether it is to be read broadly or narrowly, the court will consider the purpose and intent of EMTALA, and any relevant legislative history.

The Fourth Circuit, the only circuit to address this issue so far, offers a sound and persuasive examination of EMTALA's purposes and legislative history. In *Power v. Arlington Hosp. Ass'n,* 42 F.3d 851, 864 (4th Cir.1994), the court held a Virginia medical malpractice damages cap of one million dollars applicable to an EMTALA civil suit. The court reflected that Congress' deliberate choice of substituting the phrase "personal injury" for the prior unspecified "damages" terminology supported a reading that Congress intended to permit states to apply such restrictions on damages as limitations on punitive damages and damages caps.[2] *Id.* at 862.

*Power* supports that conclusion by quoting a report on the bill by the House Committee on the Judiciary dated prior to alteration of the language of the damages provision to specify "personal injury". The relevant portion states:

> [T]he Committee is concerned that if penalties are too severe, some hospitals, particularly those located in rural or poor areas, may decide to close their emergency rooms entirely rather than risk the civil

**2.** The enforcement provision previously read: "Any individual who suffers personal harm ... as a direct result of a participating hospital's violation of a requirement of this section may, in

a civil action against the participating hospital, obtain damages and other appropriate relief." H.R.Rep. No. 241, 99th Cong., 1st Sess. (Part 3), at 3 (1985).

fines [and] damage awards ... that might ensue.

The Committee is also concerned there was no information available to it regarding the potential impact of these enforcement provisions on the current medical malpractice crisis.

All of these considerations led the Committee to conclude that ... a decrease [might result] in available emergency care, rather that [sic] an increase in such care, which appears to have been the major goal of the section.

House Report No. 99–241 (Part 3), at 6, 1986 U.S.Code Cong. & Admin. News at 727. In applying damages caps, both *Power* and *Reid v. Indianapolis Osteopathic Medical Hosp.*, 709 F.Supp. 853, 855 (S.D.Ind.1989) (applying a $100,000 medical malpractice damages cap to an EMTALA claim), conclude that Congress " 'was clearly aware of a growing concern in some states that excessive damage awards were fueling a medical malpractice 'crisis'.' " *Power*, 42 F.3d at 862 (quoting *Reid*, 709 F.Supp. at 855); *see also Lee v. Alleghany Regional Hosp. Corp.*, 778 F.Supp. 900, 903–04 (W.D.Va.1991) (following reasoning in *Reid* in applying damages cap to EMTALA claim); *but cf. Cooper v. Gulf Breeze Hosp., Inc.*, 839 F.Supp. 1538, 1543 (N.D.Fla.1993) (holding Florida damages limitation provision inapplicable to an EMTALA claim).[3]

MICRA was California's response to the medical malpractice "crisis." The California Supreme Court highlights the legislative intent behind MICRA, and the inherent dangers of making exceptions to it in stating:

The Legislature stated the purpose of M.I.C.R.A. is "to provide an adequate and reasonable remedy" for the "major health care crisis ... attributable to skyrocketing malpractice premium costs and resulting in a potential breakdown of the health delivery system, severe hardships for the medically indigent, a denial of access for the economically marginal, and depletion of physicians such as to substantially worsen the quality of health care available to citi-

zens of this state." (Stats.1975, Second Ex.Sess. ch. 2, § 12.5, p. 4007.)

*Hedlund v. Superior Court of Orange Cty.*, 34 Cal.3d 695, 704, 194 Cal.Rptr. 805, 669 P.2d 41 (1983).

Despite plaintiff's assertions, the damages cap is not an "arbitrary restriction." Rather, it is part of the body of state responses to the "crisis" which Congress took into consideration when selecting the broad "personal injury" terminology.

This court also joins the *Power* court's determination that the different purposes of EMTALA and the state damages caps are not mutually exclusive. In support, *Power* offers a segment from the Supreme Court opinion in *Rodriguez v. United States*, 480 U.S. 522, 525–26, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987), which states:

[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law.

*Power*, 42 F.3d at 863 (quoting *Rodriguez*) (emphasis in original).

The Fourth Circuit concludes that incorporation of state damages law is an attempt by Congress "to balance the deterrence and compensatory goals of EMTALA with deference to the ability of states to determine what damages are appropriate in personal injury actions against hospitals." *Id.* at 863. While the means differ, this court notes that the ends of both the federal and state statutes are to keep medical care accessible.

Plaintiff draws attention to the fact that MICRA's damages cap of $250,000 is significantly less than the one million dollar damages cap upheld in the Fourth Circuit. Plaintiff then argues that MICRA's damages cap is arbitrary, and is so low as to defeat the purpose of EMTALA. However, in light of the previous policy-balancing discussion,

---

**3.** *Cooper* agreed with *Reid* insofar as the court held that state procedural requirements would not be incorporated under EMTALA, but came to

a contrary holding on the application of damages limitations since it was dependent on a pre-suit investigation to determine those damages.

the court does not find that the cap is arbitrary or an obstacle to EMTALA's dual purposes of deterrence and compensation.

### C. EMTALA Preemption Clause

Examination of EMTALA's preemption clause further supports a broad reading of the damages provision. The preemption clause specifies that "[t]he provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section." 42 U.S.C. § 1395dd(f). The tone of the statute appears highly deferential to state law, and thereby supports a more deferential reading of the damages clause above.

■ Congress chose to address the horrific "patient dumping" engaged in by hospitals, but nevertheless articulated in the legislative history of EMTALA its intent not to curb the states' power to limit damages. In light of the above analysis, this court holds that the MICRA damages cap is clearly within the bounds of the EMTALA damages provision.

### II. Application of MICRA to EMTALA Causes of Action

Since EMTALA does not preclude the application of MICRA restrictions, the court must now address the more specific question of whether the MICRA statute actually limits the recovery of damages sought under an EMTALA cause of action. Plaintiff contends that EMTALA makes hospitals strictly liable for any "personal harm" that "directly results" from that violation. See 42 U.S.C. § 1395dd(d)(3)(A). Thus, plaintiff argues that the MICRA damages cap should not apply to EMTALA claims because EMTALA creates a cause of action that is not "based on professional negligence." [4]

■ It is well-established that EMTALA does not create a federal remedy for medical negligence, nor does it duplicate state-law medical malpractice claims; rather, EMTALA creates a separate cause of action which makes hospitals strictly liable for refusing "essential emergency care because of a patient's inability to pay." *Eberhardt v. City of Los Angeles,* 62 F.3d 1253, 1258 (9th Cir. 1995) (citation omitted); *Summers v. Baptist Medical Center Arkadelphia* 91 F.3d 1132, 1137 (8th Cir.1996); *Vickers v. Nash General Hospital, Inc.,* 78 F.3d 139, 143 (4th Cir. 1996); *Correa v. Hospital San Francisco,* 69 F.3d 1184, 1192–93 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996); *Repp v. Anadarko Municipal Hospital,* 43 F.3d 519, 522 (10th Cir. 1994); *Holcomb v. Monahan,* 30 F.3d 116, 117 (11th Cir.1994); *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1041 (D.C.Cir.1991). Furthermore, EMTALA claims do not rest on any proof that the hospital was negligent or that the hospital failed to make a correct diagnosis or provide adequate treatment. *Williams v. Birkeness,* 34 F.3d 695, 697 (8th Cir.1994); *Summers,* 91 F.3d at 1137; *Power,* 42 F.3d at 861 (EMTALA claim does not allege breach of professional standard of care associated with malpractice claims). EMTALA and state medical malpractice laws are not synonymous causes of action; they provide "distinct remedies for distinct wrongs." *Cooper,* 839 F.Supp. at 1542.

Defendants, however, contend that MICRA does not require that EMTALA be identical to a "professional negligence" claim for MICRA's limitations to apply. They argue that MICRA only requires that a plaintiff's cause of action be "based on professional negligence" to fall within the ambit of the MICRA damages cap. In doing so, defendant relies on *Central Pathology Service Medical Clinic v. Superior Court,* 3 Cal.4th 181, 10 Cal.Rptr.2d 208, 832 P.2d 924 (1992), in which the plaintiffs filed a complaint alleging medical negligence, and later moved for leave to amend under Code of Civil Procedure section 425.13 seeking punitive damages based on new causes of action for fraud and intentional infliction of emotional distress.[5]

---

**4.** MICRA defines the phrase "professional negligence" to be "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death." Cal. Civ.Code § 3333.2(c)(2)

**5.** Section 425.13, a non-MICRA provision, establishes that "[i]n any action for damages arising

The California Supreme Court concluded that, for the purposes of section 425.13, "an action for damages *arises out* of the professional negligence of a health care provider if the injury for which damages are sought is directly related to the professional services provided by the health care provider." *Central Pathology*, 3 Cal.4th at 191, 10 Cal. Rptr.2d 208, 832 P.2d 924 (emphasis added).

Thus, the Court held that the alleged intentional tortious conduct arose out of professional negligence, and consequently was governed by section 425.13. *Id.* at 190–92, 10 Cal.Rptr.2d 208, 832 P.2d 924. In footnote three of its opinion, the Court in dictum equated the meaning of the phrase "arises out of" in section 425.13 with the "based on" language in MICRA. *Id.* at 188 n. 3, 10 Cal.Rptr.2d 208, 832 P.2d 924. Based on this footnote, defendants argue that MICRA limitations apply to EMTALA causes of action because California courts have broadly construed the "based on professional negligence" language in MICRA to encompass both intentional and non-intentional tort claims.[6]

First, and most importantly, this court is reluctant to condition a federal substantive cause of action on the *Central Pathology* Court's dictum in a case which explicitly involves a state procedural requirement.[7] The Court in fact emphasized that section 425.13 is not a MICRA provision, and that their legislative histories are different. *Id.* at 191, 10 Cal.Rptr.2d 208, 832 P.2d 924. *See also College Hospital, Inc. v. Superior Court*, 8 Cal.4th 704, 714, 34 Cal.Rptr.2d 898, 882 P.2d 894 (1994) (emphasizing *Central Pathology*'s application to section 425.13).

In so doing, this court is not alone among federal district courts. Both the *Reid* and *Cooper* courts held that "conditioning a federal cause of action with state procedural requirements was an 'extraordinary step' not supported" by EMTALA. *Cooper*, 839

F.Supp. at 1543 (quoting *Reid*, 709 F.Supp. at 854–55). The *Cooper* court goes on to reject the incorporation of Florida's damages limits into an EMTALA claim because it involved bringing in Florida's pre-suit procedures as well. *Id.*, at 1543. Applying *Central Pathology*'s dictum broadly to EMTALA claims would likewise impermissibly condition the-operation of a federal substantive cause of action on a state court's interpretation of a state procedural rule.

Moreover, those California courts which have directly addressed the scope of MICRA have clearly held that the same set of facts can support both MICRA and non-MICRA claims. *Waters v. Bourhis*, 40 Cal.3d 424, 437–38, 220 Cal.Rptr. 666, 709 P.2d 469 (1985); *Flores v. Natividad Medical Center*, 192 Cal.App.3d 1106, 1116, 238 Cal.Rptr. 24 (1987); *cf. Hedlund*, 34 Cal.3d at 701, 194 Cal.Rptr. 805, 669 P.2d 41 (MICRA applies to actions deriving from professional duty of care). Thus, a cause of action deriving from the same set of facts as a MICRA claim is not necessarily "based on" professional negligence. These same courts have further held that in hybrid actions, where both viable MICRA and non-MICRA theories are pursued and where recovery could have been based on the non-MICRA theory, MICRA limitations do not apply. *Waters*, 40 Cal.3d at 437–38, 220 Cal.Rptr. 666, 709 P.2d 469; *Flores*, 192 Cal.App.3d at 1116, 238 Cal.Rptr. 24.

In *Waters*, a former client sued the attorney who had represented her in a lawsuit against a psychiatrist, contending that the contingency fee collected by the attorney exceeded MICRA attorney fees limits. The original action which alleged that the psychiatrist engaged in sexual misconduct with the plaintiff included both professional negligence and intentional tort causes of action. The *Waters* Court explicitly found that al-

---

out of the professional negligence of a health care provider," a plaintiff must show a substantial probability that they would prevail on punitive damages claims in order to assert them. Cal.Code Civ. Proc. § 425.13.

**6.** The defendant has not cited to this court any cases which have applied MICRA to intentional torts. Rather, the cases to which defendant cites

apply only section 425.13 to intentional torts under *Central Pathology*. If, however, the defendant can provide citations to California cases which apply MICRA to intentional torts, the court would well receive such citations.

**7.** See discussion, *infra*, Part III.A, on procedural nature of section 425.13.

though both intentional tort and negligence actions could arise out of the professional relationship between doctor and patient the intentional tort claim was a separate non-MICRA cause of action and that, therefore, MICRA limitations did not apply. *Waters,* 40 Cal.3d at 434–436, 220 Cal.Rptr. 666, 709 P.2d 469.

The *Flores* court ruled that the MICRA damages cap did not apply to a prisoner's claim against the State and the prison doctors based on both negligent medical treatment and failure to summon medical aid for a prisoner under California Government Code section 845.6, even though the state employees who failed to summon help were themselves physicians.[8] *Flores,* 192 Cal.App.3d at 1117, 238 Cal.Rptr. 24. The court held that "[a]lthough the failure to summon assistance could have provided a basis for the finding of professional negligence against the doctors, this does not render the true nature of the action against the State one for professional negligence." *Id.* at 1116, 238 Cal.Rptr. 24. Following the ruling in *Waters,* the court concluded that since the failure to summon assistance was a separate and non-MICRA claim, the MICRA damages cap would not apply. *Id.* at 1117, 238 Cal.Rptr. 24.

■ Plaintiff's complaint states a claim for damages under common law negligence, California Health and Safety Code section 1317, *et seq.* (a state law version of EMTALA), and EMTALA. Although the same set of facts gives rise to all three causes of action, the court holds that an EMTALA cause of action is not "based on professional negligence" for the purposes of MICRA. Although the harm suffered as a result of the hospital's failure to meet EMTALA's statutory requirements may also permit the plaintiff to maintain a negligence claim, this court cannot go so far as to restrict plaintiff's recovery of damages for her EMTALA claims by applying California's MICRA damages cap which explicitly is limited to claims "based on professional negligence."

Defendants, however, argue that preventing the application of the MICRA cap to

EMTALA claims would run contrary to the Fourth Circuit's decision in *Power* to limit the recovery of EMTALA damages pursuant to a state statute. The state damages cap considered by the *Power* court is distinguishable in scope from MICRA. In deciding whether the Virginia Medical Malpractice Act limited the recovery of damages under EMTALA, the *Power* court specifically pointed out that the Virginia statute was applicable to "*any tort* based on health care or professional services rendered." *Power,* 42 F.3d at 861 (emphasis added). The court contrasted the Virginia Medical Malpractice Act to Maryland's Medical Malpractice Act, which had been construed by the Maryland courts as much narrower. *Id.* (citations omitted). *See Brooks v. Maryland General Hosp., Inc.,* 996 F.2d 708, 713 (4th Cir.1993) (Maryland Malpractice Act does not cover EMTALA claims because EMTALA claims not based on breach of community standard of care); *Cannon v. McKen,* 296 Md. 27, 459 A.2d 196, 201 (1983) (Maryland Act only covers claims involving breach of duty to exercise professional expertise); *Miles Labs. v. Doe,* 315 Md. 704, 556 A.2d 1107, 1125 (1989) (claim against Red Cross not for malpractice and therefore not actionable under the Maryland Act).

Because MICRA does not extend to all tort claims, as did the Virginia statute, but rather only to those actions "based on professional negligence," the *Power* decision is distinguishable from the case at bar. Accordingly, this court holds that the MICRA damages cap does not apply to the recovery of damages under an EMTALA cause of action.

### III. *Applicability of Bar On Punitive Damages*

Defendants East Bay, Ollada and Steele move to apply California Code of Civil Procedure section 425.13 to plaintiff's complaint, thereby striking the punitive damages claims. Section 425.13 provides in part:

any action for damages arising out of the professional negligence of a health care

---

**8.** Section 845.6 provides that a public employee or entity "is liable if the employee knows or has reason to know that the prisoner is in need of

immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Govt.Code § 845.6.

provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing, ... on the basis ... that the plaintiff has established that there is a substantial. probability that the plaintiff will prevail on the claim."

Cal.Code Civ. Proc. § 425.13(a). Defendants point out that plaintiff has neither requested leave to amend to include the claim for punitive damages, nor made a showing of a substantial probability of prevailing. Consequently, defendants request that the punitive damages claims be stricken until such time as plaintiff claims punitive damages in compliance with section 425.13(a).

Defendants Ollada and Steele alternatively allege that plaintiff cannot claim punitive damages because she cannot satisfy California Civil Code section 3294. That section provides for damages only "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294(a). Defendants contend that plaintiff's complaint wholly fails to allege the requisite facts to support a claim for punitive damages.

In order to resolve these issues, it is first necessary to determine where and under what law plaintiff seeks punitive damages. In her complaint, plaintiff alleges nine counts on which she requests relief. Counts five, eight and nine exclusively request injunctive relief, and hence are not relevant to the present discussion.

In counts one, two and four, plaintiff seeks compensatory damages for wrongful death under EMTALA and state law causes of action. Since plaintiff made a general request for exemplary damages at the end of the complaint, East Bay at one point sought to strike the claim for exemplary damages as it pertained to counts one, two and four, relying on section 377.61 as an absolute bar on claims for punitive damages in wrongful death actions. Plaintiff, however, later conceded that she could not, and did not, claim punitive damages on those counts. Plaintiffs' Response and Opposition at 2.

Plaintiff still claims punitive damages under count three for personal injuries suffered by Mr. Jackson. Count three specifically claims that Mr. Jackson suffered "personal injuries and special damages according to proof" based on strict liability and medical negligence causes of action. Complaint ¶ 27. The strict liability cause of action is brought against only East Bay and Adventist under both EMTALA and Health and Safety Code section 1317. The medical negligence claim, however, is brought against all of the defendants.

The parties have fully briefed the application of state punitive damages requirements on plaintiff's state claims in federal court. The court will now resolve that issue. The court, however, orders the parties to submit supplemental memoranda on whether decedent's estate may recover punitive damages under EMTALA and California survivorship law. If the parties are in agreement as to what damages a decedent's survivor may recover under EMTALA and California survivorship law, the court requests that the parties stipulate as to the extent of their agreement.

### A. Application of Section 425.13

■ The court has jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. section 1367(a) under its supplemental jurisdiction. When a federal court has supplemental jurisdiction over a plaintiff's state claims, state substantive law governs the merits of that claim. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

However, the court's determination of whether to apply section 425.13's requirement of seeking permission of the court to claim punitive damages raises an Erie issue: Is the punitive damages requirement substantive, so that state law applies, or is it procedural, so that federal law applies? See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Although the Ninth Circuit has not yet decided this issue, the court takes direction from a related decision in Shakey's Inc. v. Covalt, 704 F.2d 426, 435–36 (9th Cir.1983).

**1352**

The *Erie* problem was confronted in *Shakey's*, where the court held that "[t]he decision to hold an evidentiary hearing when making an attorney's fee award is a matter of procedure, and is therefore governed by federal law under the Erie doctrine." *Id.* at 435.

■ This court similarly considers section 425.13's requirement to be a procedural matter rather than a substantive one. The requirement is essentially a method of managing or directing a plaintiff's pleadings, rather than a determination of substantive rights.

In fact, the California courts have themselves held section 425.13 procedural in nature. *Vallbona v. Springer*, 43 Cal.App.4th 1525, 51 Cal.Rptr.2d 311 (425.13 procedural since it does not affect a substantive right); *Goodstein v. Superior Court*, 42 Cal.App.4th 1635, 50 Cal.Rptr.2d 459 (1996) (holding that ejection 425.13 is a procedural instrument which shifts to plaintiff the burden that would otherwise fall to defendant of removing unsubstantiated or frivolous claims early in the suit).

Defendant Steele cites two cases from the district of Minnesota in support of his argument that section 425.13 is applicable to the present case. The first case, *Fournier v. Marigold Foods, Inc.*, 678 F.Supp. 1420 (D.Minn.1988), applies a Minnesota statute similar to section 425.13 to a state claim in a federal court in a diversity action. The second case, *Stock v. Heiner*, 696 F.Supp. 1253 (D.Minn.1988), stretches that statute to a pendent state claim. However, neither of these cases examines whether that statute is procedural or substantive, an inquiry this court finds essential to resolution of the issue. Consequently, the court sees no reason to follow those decisions.

Defendant Ollada claims that section 425.13 should be applied pursuant to *Wray v. Gregory*, 61 F.3d 1414 (9th Cir.1995). In *Wray*, a case concerning a medical malpractice diversity action, the court applied Nevada rules regarding admissibility of the findings of the required medical screening panel rather than the Federal Rules of Evidence. Although the court acknowledged that the state rule was largely procedural, the court chose to apply it, holding that "where a state

evidence rule is 'intimately bound up' with the rights and obligations being asserted, *Erie* mandates the application of a state rule in a diversity suit." *Id.* at 1417 (citations omitted).

However, in finding that the rule was "intimately bound up" with the state's substantive law, the court determined that Nevada had established an 'integrated scheme' for managing medical malpractice claims, and that "[t]he findings of the medical screening panel constitute a central feature of that scheme." *Id.* at 1418. The court continued by reasoning that it would not make sense for the federal courts to apply the state law requiring that plaintiffs first submit their claims to a state screening panel before bringing suit if the court was going to completely disregard Nevada's "carefully tailored rules" controlling how the findings may be used in court. *Id.*

It is instructive that Ollada relies on *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). *Leatherman* holds that a federal court may not apply a state law which requires "heightened pleading" in civil rights cases alleging municipal liability. The Court dismissed respondents' state policy argument and held that the Federal Rules, and not the state procedures, would apply. *Leatherman*, 507 U.S. at 167–68, 113 S.Ct. at 1162–63. *Leatherman* does not appear to support Ollada's argument, and it is unclear why he chose to rely on it.

This court does not view the procedural requirements of section 425.13, a non-MICRA provision, to be so "intimately bound up" with the state's substantive law that it must be applied. Unlike in *Wray*, the procedural requirement for heightened standards for adding punitive damages to a claim is not "a central feature" of the state medical malpractice scheme to the extent that disregarding the rule will render the scheme impotent.

Finally, the California Supreme Court noted that it was the Legislature's intent in enacting section 425.13 "to provide additional protection by establishing a pretrial hearing mechanism by which the court would deter-

mine whether an action for punitive damages could proceed." *Central Pathology,* 3 Cal.4th at 189, 10 Cal.Rptr.2d 208, 832 P.2d 924. Federal courts are given substantial authority to manage their calendars; indeed, they are so mandated. See Fed.R.Civ.P. 16. Thus, federal courts readily accomplish the purposes contemplated by section 425.13 through their case management procedures. Section 425.13 does not supplant those.

Since section 425.13 is a procedural requirement and does not warrant special exception, it is therefore inapplicable, and plaintiff's punitive damages claims will not be stricken due to failure to comply with that section.[9]

### B. *Application of Section 3294*

As set forth above, determination of whether to apply a federal or state law to a pendent state claim in federal court depends upon classification of the state law as procedural or substantive. The court considers California Civil Code section 3294 to be a substantive law, as it *establishes a right* to recover punitive damages, and lists the essential elements, rather than laying out a procedural requirement. Section 3294 provides:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ.Code § 3294(a).

Defendants Ollada and Steele contend that plaintiff's complaint fails to allege oppression, fraud or malice, and therefore her punitive damages claims should be stricken or dismissed. Plaintiff fails to address this issue in her replies to defendants' motions.

Count three incorporates by reference paragraphs 1 through 15 of the complaint, which allege negligent treatment, cursory examinations, lack of competent medical screening, failure to treat, and administration of dangerous contraindicated medications. Complaint ¶¶ 1–15. In paragraph 26 of count three, plaintiff states that "[t]he above alleged acts, errors and omissions were done in reckless disregard for the rights, health and safety of ROBERT." *Id.* at ¶ 26. Plaintiff ends count three with a request for "special damages according to proof." *Id.* at ¶ 27.

In determining whether plaintiff has alleged oppression, fraud or malice, the court Looks to the definitions of those terms provided in section 3294:

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a *willful and conscious disregard* of the rights or safety of others.
>
> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in *conscious disregard* of that person's rights.
>
> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ.Code § 3294(c)(1)–(3) (emphasis added).

■ Although the court will apply the substantive law embodied in section 3294, "determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure." *Pease & Curren Refining, Inc. v. Spectrolab Inc.,* 744 F.Supp. 945, 948 (C.D.Cal.1990), *abrogated on other grounds, Stanton Road Associates v. Lohrey Enterprises,* 984 F.2d 1015 (9th Cir.1993), *cert. granted Key Tronic Corp. v. U.S.,* 510 U.S. 1023, 114 S.Ct. 633, 126 L.Ed.2d 592 (1993) *and cert. dismissed Key Tronic Corp. v. U.S.,* 510 U.S. 1031, 114 S.Ct. 652, 126 L.Ed.2d 609 (1993). Pursuant to those rules, a pleading need only "contain . . . a short and plain statement of the claim showing that the

---

9. As the court has decided not to apply section 425.13 to plaintiff's punitive damages claims, the court need not address plaintiff's assertion that defendants have waived the protection of section 425.13.

pleader is entitled to relief and ... a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). Therefore, despite section 3294's specific requirement that a pleading allege oppression, fraud or malice, these "may be averred generally." Fed. R.Civ.P. 9(b); *see also Pease,* 744 F.Supp. at 949.

■ However, even under these relaxed standards, plaintiff has failed to allege oppression, fraud or malice. Plaintiff's claim that defendants acted in "reckless disregard" does not satisfy section 3294, either specifically or generally. "Reckless disregard" does not meet the callous or "willful and conscious disregard" standard of section 3294.

Furthermore, each act alleged in count three is an "error or omission," which similarly does not rise to the level of oppression, fraud or malice.

Consequently, plaintiff's punitive damages claims are stricken. However, the court grants plaintiff leave to amend her complaint to include facts of further specificity which satisfy the requirements of Civil Code section 3294.

## C. *Recoverable EMTALA Damages in Survival Action*

During hearings on the EMTALA and damages issues addressed here the court raised the threshold issue of whether Mr. Jackson's EMTALA claims survive his death and the implications of California survivorship law on the damages which plaintiff may obtain under EMTALA. As yet, this court has had no occasion to consider whether an EMTALA action for damages survives the decedent. However, the court requests that the parties submit supplemental briefing on what damages decedent's heirs and successors may recover under EMTALA and California survivorship law. If the parties are in agreement as to what damages a decedent's personal representative or survivor may recover under EMTALA and California survivorship law, the court requests that the parties stipulate as to the extent of their agreement.

On the issue of survivorship, the courts have generally addressed EMTALA claims brought by the decedent's survivors. *See generally Eberhardt,* 62 F.3d 1253; *Draper v. Chiapuzio,* 9 F.3d 1391 (9th Cir.1993); *Gatewood,* 933 F.2d at 1038–39; *Baber v. Hospital Corp. of America,* 977 F.2d 872 (4th Cir.1992). In doing so, the courts have properly looked to state law for guidance on the issue of survivorship and the award of damages allowed the survivor. *Correa v. Hospital San Francisco,* 69 F.3d 1184, 1196 (1st Cir.1995) (EMTALA permits individual who has a "special relationship" with decedent to bring survivors' actions under local law); *Lane v. Calhoun–Liberty County Hospital Ass'n. Inc.,* 846 F.Supp. 1543, 1552–53 (N.D.Fla.1994) (permitting claimants to recover those damages available to survivors under Florida law); *Griffith v. Mt. Carmel Medical Center,* 826 F.Supp. 382, 383–84 (D.Kan.1993) (affirming award of selected damages to wife and children of decedent). Under California law, a "cause of action for ... a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Cal.Code Civ. Proc. § 377.20. Thus, it is clear that Mr. Jackson's EMTALA causes of action survive his death.

No consensus, however, has been reached as to whether EMTALA itself permits the survivor to recover damages for "personal harm" suffered by the decedent even if state law permits the survival of decedent's EMTALA claim. *See Correa,* 69 F.3d at 1196–97 (discussing plausible constructions of EMTALA); *Griffith,* 826 F.Supp. at 383–84 (denying punitive damages based on EMTALA language although state law permitted such damages); *but cf. Lane,* 846 F.Supp. at 1552–53 (denying punitive damages based on state law); *Baucom v. DePaul Health Center,* 918 F.Supp. 288 (E.D.Mo.1996). EMTALA states that any "individual who suffers personal harm as a direct result" of a hospital's EMTALA violation may recover those damages available for "personal injury" under state law. 42 U.S.C. § 1395dd(d)(2).

Several possible interpretations of the application of EMTALA's damages provision to decedent's survivors exist. *See, e.g., Correa,*

69 F.3d at 1196. It is possible to broadly construe the damages provision so as to permit a decedent's heirs and representatives to recover any damages allowed to the decedent under local law, as well as any damages recoverable by decedent's heirs and successors for any "personal harm" that they suffered individually. *Id.* Under this broad construction, plaintiff would be permitted to recover both those damages resulting from personal harm suffered by Mr. Jackson which survive under California law, as well as those damages resulting from the harm suffered by the plaintiff herself.

California law permits a decedent's heirs or successors to recover damages resulting from the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived. Cal. Code Civ. Proc. § 377.34. However, section 377.34 specifically excludes a survivor's recovery of damages for pain, suffering, or disfigurement. California law provides, in addition to recovery by the representative of the estate on the decedent's cause of action, a wrongful death action by decedent's heirs. Cal.Code Civ. Proc. §§ 377.60, 377.61. Under these provisions, designated surviving relatives or the decedent's heirs at law can recover pecuniary losses caused by the death, including pecuniary support the decedent would have provided them, and noneconomic damages for being deprived of the decedent's society and comfort.

On the other hand, the EMTALA damages provision may be more narrowly interpreted to limit the survivor's recovery to only those damages that result from "personal harm" the survivor herself has suffered individually. *See id.; Griffith,* 826 F.Supp. at 384. Such a construction would limit plaintiff's recovery to only those damages which survive in a wrongful death claim. The *Griffith* court held that the only "personal harm" which the plaintiff-survivor suffered was due to the wrongful death of the decedent, and thus, the plaintiff's damages recovery was limited to what was permitted for wrongful death under Kansas law. *Griffith,* 826 F.Supp. at 384–85 (precluding recovery of punitive damages in wrongful death action under Kansas law). The *Griffith* court however did not reach the question of whether an EMTALA action for injuries personal to the decedent survives to decedent's estate. *Id.,* at 385 n. 4 (citations omitted). Under this more narrow interpretations plaintiff would only be able to recover those damages permitted under California's wrongful death provisions.

Although the court reserves decision on the scope of damages recoverable by the plaintiff under EMTALA, a proper reading of EMTALA would appear to permit decedent's heirs and successors to recover damages for the personal harm suffered by decedent to the extent permitted under state survivorship law, as well as for the personal harm suffered by the survivors themselves if so permitted under a state wrongful death provision. Thus, plaintiff may be able to recover those damages allowed under section 377.34 as well as sections 377.60 and 377.61. In order to clarify the parties' positions on these issues, the court thus orders the parties to submit simultaneous supplemental memoranda on what damages decedent's estate may recover under EMTALA and California survivorship law, If the parties are in agreement as to what damages a decedent's personal representative or survivor may recover under EMTALA and California survivorship law, the court requests that the parties stipulate as to the extent of their agreement.

**IV.** *Steele's Motion For Judgment On The Pleadings*

Defendant Steele contends that plaintiff has not and cannot allege facts to support her claims against him under section 1395dd and section 1983.

**A.** *Action Under EMTALA*

■ EMTALA provides that an individual injured by a hospital's violation of the statute may obtain damages *"in a civil action against the participating hospital."* 42 U.S.C. § 1395dd(d)(2)(A) (emphasis added). Defendant argues that plaintiff's action against him for violation of EMTALA must fail because the statute only creates a private right of action against hospitals.

The Ninth Circuit clearly addressed this issue in *Eberhardt* where it held that the plain text of the statute explicitly restricts actions under EMTALA to actions against hospitals, and does not provide a private right of action against physicians. *Eberhardt*, 62 F.3d at 1256–57. The court highlighted the fact that the holding was consistent with every appellate court that had ever addressed the issue. *Id.*

In light of the Ninth Circuit decision, and the fact that plaintiff offers no argument in opposition, the court grants defendant's motion for a judgment on the pleadings as to plaintiff's action against him under EMTALA.

### B. *Action Under Section 1983*

■ "Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory....'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). In order to assert a valid claim, a plaintiff must allege the deprivation of a federal right, and that the person who deprived the plaintiff of that right acted under color of state law. The complained of action must be "fairly attributable to the state," and not to a private actor. *Id.* at 937, 102 S.Ct. at 2753–54.

Defendant Steele asserts that a private physician in a private hospital cannot be considered as acting under color of state law. In response, plaintiff contends that such a situation *can* produce an action under color of law, and that plaintiff has set forth such an allegation.

■ In resolving the matter, the court takes notice of three factors utilized by the Supreme Court in evaluating the state action issue. First, there must be a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004–12, 102 S.Ct. 2777, 2785–89, 73 L.Ed.2d 534 (1982). That nexus must be such that the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* Finally, the entity must have exercised powers "that are traditionally the Exclusive prerogatives of the State." *Id.*

These factors must be applied to the specific facts alleged in count six of plaintiff's complaint. Plaintiff asserts that the County (initially, but no longer a defendant) involuntarily committed Mr. Jackson at East Bay under Welfare and Institutions Code section 5150. Complaint ¶ 35. Plaintiff then asserts that defendants East Bay and Steele "were acting for, instead and on behalf of defendant COUNTY and under color of state law," and that Steele was an agent and servant of East Bay, and "responsible for conditions, policies and procedures at East Bay." *Id.* at ¶¶ 36 & 37.

Plaintiff further contends that East Bay falsely represented itself as an acute care hospital able to care for patients, such as Mr. Jackson, who had been involuntarily committed. Plaintiff alleges that those false representations were made in order to qualify for payments under the federal Medicare Program. *Id.* at ¶ 38. Finally, plaintiff asserts that East Bay disregarded the health of patients "in order to maximize profits." *Id.* at ¶ 39.

Although it may be possible to bring a section 1983 claim against a private doctor acting in a private hospital, the claim must satisfy the factors listed above. After careful examination of the complaint, the court finds that plaintiff's factual allegations do not support a section 1983 claim against Steele. Plaintiff's allegations do not create a sufficiently close nexus between the state and the doctor or the hospital.

■ In her opposition to Steele's motion, plaintiff asserts that Steele's involuntary admission, commitment and subsequent treatment of Mr. Jackson constituted action under color of state law. However, Steele's decision to submit Mr. Jackson to involuntary commitment is alone *insufficient to establish state action.*

In *Harvey v. Harvey*, 949 F.2d 1127, 1134 (11th Cir.1992), where a plaintiff brought a civil rights action against her husband, private physicians and a private hospital for her involuntary commitment, the Eleventh Circuit held that the defendants were not state .actors. In the decision, the court cited a similar Seventh Circuit case, *Spencer v. Lee*, 864 F.2d 1376 (7th Cir.1989) with approval. The Eleventh Circuit observed that "[i]n Spencer, not only the majority but also the dissent apparently agreed that members of the general citizenry cannot be considered state actors when they decide to institutionalize a patient." *Harvey*, 949 F.2d at 1133.

Concurring in part and dissenting in part with the majority in *Spencer*, Judge Ripple clearly examined the present issue:

> The simple invocation of state legal procedures, standing alone, does not constitute joint participation or conspiracy with state officials. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 n. 21, 102 S.Ct. 2744, 2755 n. 21, 73 L.Ed.2d 482.... Therefore, ... we can conclude that the decision of the family and the physician to seek involuntary commitment is not action attributable to the state. The state neither commands nor encourages such private initiative. *See Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534,.... "Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum*, 457 U.S. at 1004–05, 102 S.Ct. at 2786.

*Spencer*, 864 F.2d at 1383.

 Furthermore, plaintiff does not assert state action by contending that the treatment of persons afflicted with mental disease has been "traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). In fact, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Id.* at 350, 95 S.Ct. at 453.

The court concludes its analysis of this issue by considering whether plaintiff has sufficiently alleged state action in other ways. In paragraph 37, plaintiff contends that Steele, in addition to other unnamed defendants, was responsible for the policies and procedures at East Bay. Other than generally alleging that Steele was acting for the County and under color of state law, plaintiff offers no facts or explanations to support that statement. It appears to be nothing more than an unsupported conclusion.

 Plaintiff also appears to suggest that Steele was acting under color of state law as a servant of East Bay, whom he also claims is a state actor. However, the only facts or allegations offered to support such a conclusion allege that East Bay, and consequently Steele, were state actors because they were receiving Medicare funds.

Extensive case law establishes that a private doctor or hospital cannot be deemed a state actor merely because they are recipients of state or federal funding. Even governmental regulation and the receipt of federal funds, such as Medicare, Medicaid or Hill–Burton funds, are insufficient to establish that an otherwise private hospital or other entity acted under color of state law. *Mendez v. Belton*, 739 F.2d 15, 18 (1st Cir. 1984); *see also Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785–86 (fact that nursing home was extensively regulated was insufficient to establish it as state actor); *Rendell–Baker v. Kohn*, 457 U.S. 830, 840–43, 102 S.Ct. 2764, 2770–73, 73 L.Ed.2d 418 (1982) (private school which received 90 percent of funds from government and was extensively regulated was not state actor under section 1983).

In a section 1983 action against a private hospital, the Ninth Circuit held that:

> Neither "the enjoyment by the hospital of tax exemptions, its regulation by the state and its performance of a public function" in addition to receipt of Hill–Burton funds, are proper grounds for holding that it acted under color of state law with respect to 42 U.S.C. § 1983.

*Taylor v. St. Vincent's Hosp.*, 523 F.2d 75, 77 (9th Cir.1975) (quoting *Chrisman v. Sisters of St. Joseph of Peace*, 506 F.2d 308, 312–14

(9th Cir.1974)). Consequently, to the extent that plaintiff bases her allegations on East Bay's identity as a state actor because it receives Medicare funds, that argument must fail.

The fact that East Bay and Steele allegedly made false representations of their ability to provide adequate treatment was neither required, ordered, nor encouraged by the decision to provide the hospital with Medicare funds, and hence does not fulfill the coercion factor. Likewise, plaintiff's assertion that East Bay's policies and actions were under color of state law because they were based on a desire to maximize profits must also fail since East Bay is a private hospital and the sole beneficiary of its profits.

Consequently, the court grants judgment on the pleadings as to this issue in favor of defendant. However, at plaintiff's request, the court will grant leave to amend the complaint to add facts which will satisfy the requirements of alleging state action by a private doctor or hospital. Although defendant East Bay did not join defendant Steele's motion, the court similarly dismisses, *sua sponte,* plaintiff's section 1983 claim in count six against East Bay, and the similar section 1983 claim in counts seven and eight against East Bay.

*CONCLUSION*

For the foregoing reasons the court hereby:

1) GRANTS plaintiff's motion, and DENIES defendants' motions, for partial summary judgment regarding applicability of the MICRA damages cap to the EMTALA claims;

2) DENIES defendants East Bay, Ollada and Steel's motions for application of the state punitive damages requirements of California Code of Civil Procedure section 425.13 to plaintiff's state claims;

3) GRANTS defendants Ollada and Steele's motions for application of California Civil Code section 3294 to plaintiff's state claims;

4) GRANTS judgment on the pleadings in favor of defendant Steele as to plaintiff's EMTALA claim against him;

5) GRANTS judgment on the pleadings in favor of defendant Steele as to plaintiff's 42 U.S.C. section 1983 action against him; and,

6) ORDERS that within thirty (30) days of the date of this order the parties submit simultaneous supplemental memoranda not to exceed ten (10) pages on what damages decedent's estate may recover under EMTALA and California survivorship law. If the parties are in agreement as to what damages a decedent's personal representative or survivor may recover under EMTALA and California survivorship law, the court REQUESTS that the parties stipulate as to the extent of their agreement.

IT IS SO ORDERED.