PRESENT:  All the Justices

ANTHONY M. RIZZO, JR.

OPINION BY
v.  Record No.  970596      JUSTICE CYNTHIA D. KINSER
                                February 27, 1998
VIRGINIA RETIREMENT SYSTEM, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we determine when the ninety-day limitation

in Code § 9-6.14:11(D), during which an agency is required to

render a case decision, begins to run.  Because we find that the

ninety days must be counted from the date that the agency

representative held a fact-finding conference, we will reverse

the judgment of the Court of Appeals.

I.

     This case involves the claim of Anthony M. Rizzo, Jr., for

disability retirement benefits under the Virginia Retirement

System (VRS).  As a VRS member, Rizzo applied for disability

retirement benefits on November 14, 1988.  Following an initial

denial of his claim and subsequent judicial appeals that

resulted in a remand to VRS,[1] a VRS agency representative

_____

     [1] After denial of his claim in a final case decision by VRS
dated September 19, 1991, Rizzo appealed to the Circuit Court of
Orange County.  In an order dated April 29, 1993, the court set
aside the denial and remanded the case to VRS for further
proceedings to include a new hearing.  VRS then appealed to the
Court of Appeals, which, in an unpublished memorandum opinion
dated July 12, 1994, affirmed, insofar as is pertinent here, the
circuit court's judgment.  In accordance with the judgment of

conducted an informal fact-finding proceeding pursuant to Code §

9-6.14.11(D) on April 25, 1995.[2]  At this proceeding, Rizzo

incorporated all the evidence from the previous administrative

hearing and introduced additional psychiatric evidence from Dr.

Robert Stanley Brown, Jr.

Over Rizzo's objection, the agency representative sent the

transcript of the hearing to VRS on May 24, 1995, and asked VRS

to forward the transcript to the Medical Board[3] since it

contained Dr. Brown's testimony regarding Rizzo's condition.  On

June 19, 1995, VRS transmitted Dr. Brown's testimony to the

_____

the Court of Appeals, the circuit court then remanded Rizzo's
claim to VRS.

[2] VRS requested the agency representative "to conduct a
fact-finding hearing" in a letter dated December 29, 1994.  The
agency representative also referred to the proceeding as a
"hearing" but conducted it as an informal fact-finding
proceeding rather than a formal hearing as defined in Code § 9-
6.14:4(E).

[3]  The Board of Trustees of VRS employs the Medical Board
pursuant to Va. Code § 51.1-124.23.  The Medical Board reviews
reports of medical examinations, investigates health and medical
statements submitted in connection with disability retirement,
and reports its conclusions and recommendations to VRS.  Code §
51.1-124.23(B).  The Medical Board also has certain additional
responsibilities in regard to disability retirement.  Code §
51.1-156(E).
Title 51 of the Code, "Pensions and Retirement," was
repealed effective July 1, 1990, but was replaced by Title 51.1,
"Pensions, Benefits and Retirement," on that date.  Even though
Rizzo applied for disability retirement benefits in November
1988, the differences in the recodification are not material for
purposes of the present opinion.  Hence, the current version
will be cited.

Medical Board and asked it to examine the new evidence, review for the second time the previous medical evidence, and comment on all of it. Then on June 28, 1995, the Medical Board decided that Dr. Merritt W. Foster, Jr., a consulting psychiatrist, should review the evidence. Almost a month later, VRS directed the Medical Board to proceed with Dr. Foster's analysis. On September 27, 1995, the Medical Board forwarded Dr. Foster's report to VRS, and VRS sent the report to the agency representative on October 4, 1995.

Before the Medical Board received Dr. Foster's report, Rizzo notified VRS on August 11, 1995, more than ninety days after the April informal fact-finding proceeding, that a decision was due. In response, VRS informed Rizzo that it would endeavor to have the Medical Board "move forward." On September 27, 1995, Rizzo again notified VRS that a decision was due. Finally, on October 6, 1995, Rizzo informed the agency representative and VRS that, pursuant to Code § 9-6.14:11(D), there was a decision now "'deemed to be in his favor'" for the following reasons:

> (1) more than 90 days elapsed since the date of the informal fact-finding proceeding on remand . . . (2) after the lapse of such period and by at least 21 August 1995 . . . the VRS received our notice that "a decision is due", notwithstanding which (3) no final decision of the System, from its board of trustees, was made within a further 30 days from the System's receipt of our notice.

3

Therefore, Rizzo requested VRS to calculate and pay him the benefits he sought.  VRS responded on October 22, 1995, by stating that, under Code § 9-6.14:11(D), the "proceeding" envisioned was not concluded until VRS received the Medical Board's report.

On November 6, 1995, the agency representative submitted a recommendation to VRS that Rizzo be awarded disability retirement benefits.  On the same day, however, VRS issued its final case decision denying Rizzo benefits.  This case decision came 195 days after the agency representative had conducted the informal hearing.

Rizzo then appealed again to the Circuit Court of Orange County and filed a motion for summary judgment.  In his motion, Rizzo argued, inter alia, that VRS failed to render a decision within the prescribed time limits and, therefore, in accord with Code § 9-6.14:11(D), a decision had been "deemed" in his favor.  After hearing argument by both parties, the circuit court stated the following reasons for granting Rizzo's motion:

> [T]he General Assembly, by using the phrase "from the date of the informal fact-finding proceeding" in the statute intended that the 90 day period begin to run in a case such as the case at bar when the agency representative holds the fact-finding hearing.  Otherwise, the agency representative and the agency's medical board would wholly control the time of decision and the limitation in the statute would be practically meaningless.

4

VRS appealed, and the Court of Appeals reversed. Distinguishing between the responsibility of VRS to gather facts and its responsibility to render a decision, the Court of Appeals concluded that the "legislature intended [the time limitations of Code § 9-6.14:11(D)] to begin running at the close of the fact-gathering stage of the adjudication process," in this case, when VRS received the Medical Board's report. Virginia Retirement System v. Rizzo, 23 Va. App. 698, 705, 479 S.E.2d 535, 538 (1997).

The Court of Appeals denied Rizzo's subsequent petition for a rehearing en banc. We awarded Rizzo an appeal.

II.

VRS is established pursuant to Chapter 1 of Title 51.1 of the Virginia Code and is administered by a Board of Trustees. Code § 51.1-124.22. Part of the responsibilities and duties of VRS is to determine entitlement to retirement benefits, including disability retirement. See Code § 51.1-156.

As an agency empowered to make regulations and decide cases, VRS is subject to the Administrative Process Act (APA), Code §§ 9-6.14:1 to .14:25. The purpose of the APA is to "supplement . . . basic laws conferring authority on agencies .

. . [to] decide cases . . . . ."[4]  Code § 9-6.14:3.  It does not

"supersede or repeal additional procedural requirements in such

basic laws."  Id.

The APA establishes two procedures that an agency can

utilize to render a "case decision"[5] - an informal procedure and

a formal or trial-like procedure.  VRS utilized the informal

procedure to decide Rizzo's claim.[6]  The informal procedure

requires agencies to "ascertain the fact basis for their

decisions of cases through informal conference or consultation

proceedings."  Code § 9-6.14:11(A).  During such "conference-

consultation procedures," the parties have the right to notice

thereof, to appear in person or by a representative for the

"informal presentation of factual data, argument, or proof," to

have notice of any contrary fact basis or information, to

---

[4] Basic law "means provisions of the Constitution and statutes of the Commonwealth of Virginia authorizing an agency to make regulations or decide cases or containing procedural requirements therefor."  Code § 9-6.14:4(C).

[5] The APA defines "case decision," in pertinent part, as "any agency proceeding or determination that, under laws or regulations at the time, a named party as a matter of past or present fact, . . . [is] in compliance with any existing requirement for obtaining or retaining a license or other right or benefit."  Code § 9-6.14:4(D).

[6] An agency is required to use the formal procedure when its "basic laws provide expressly for decisions upon or after hearing."  Code § 9-6.14:12(A).

6

receive a prompt decision, and to be advised, generally in writing, of the basis for an adverse decision.  Id.

At issue in this appeal is the time frame in which VRS was required to render a decision in Rizzo's case under the informal procedure.  The relevant subsection states the following:

> In any informal fact-finding proceeding in which a hearing officer, as described in § 9-6.14:14.1, is not used or is not empowered to recommend a finding, the board, commission, or agency personnel responsible for rendering a decision shall render that decision within ninety days from the date of the informal fact-finding proceeding or from a later date agreed to by the named party and the agency.  If the agency does not render a decision within ninety days, the named party to the case decision may provide written notice to the agency that a decision is due.  If no decision is made within thirty days from agency receipt of the notice, the decision is deemed to be in favor of the named party.

Code § 9-6.14:11(D).

Rizzo argues that the ninety days in this subsection commenced when the agency representative conducted the fact-finding proceeding on April 25, 1995.  VRS contends that the ninety days did not start to run until it received the Medical Board's report.[7]  According to VRS, the term "fact-finding proceeding" used in subsection D is more expansive than the term "conference or consultation proceedings" found in subsection A.  Thus, argues VRS, the General Assembly used the term "fact-

---

[7] At oral argument, VRS argued that the ninety days did not begin to run until it received the agency representative's recommended decision.

finding proceeding" in conjunction with the time limitations because the basic laws of some agencies may require other fact-finding steps after the informal conference or consultation has taken place.  In the present case, VRS maintains that its basic law requires the Medical Board's review of evidence and therefore, the ninety days could not commence until VRS received that report.

The argument by VRS that the ninety days did not begin to run on April 25, 1995, is not in accord with the overall framework of the APA.  In Code § 9-6.14:11, agencies are directed to use informal conference or consultation proceedings to determine the fact basis for their decisions.  We find nothing in Code § 9-6.14:11 to suggest that the General Assembly, by using the term "fact-finding proceeding" in subsection D as opposed to the phrase "conference or consultation" in subsection A, thereby intended to create a separate fact-gathering stage.  To determine otherwise and to accept the position of VRS would result in a fact-gathering stage subject to no time constraints.

The term "fact-finding proceeding" is not defined in the APA; thus, it must be "given its ordinary meaning, given the context in which it is used."  Commonwealth of Virginia, Dept. of Taxation v. Orange-Madison Coop. Farm Serv., 220 Va. 655, 658, 261 S.E.2d 532, 533-34 (1980).  "The context may be

8

examined by considering the other language used in the statute." City of Virginia Beach v. Board of Supervisors of Mecklenburg Co., 246 Va. 233, 236-37, 435 S.E.2d 382, 384 (1993). Accordingly, we conclude that the phrase "any informal fact-finding proceeding" in subsection D refers to the "conference or consultation proceedings" first mentioned in subsection A of the same section.  In this case, that proceeding was the informal conference that the agency representative held on April 25, 1995.

Furthermore, Code § 9-6.14:11(D) says that the agency shall render a decision "within ninety days from the date of the informal fact-finding proceeding."  (Emphasis added).  The term "date" indicates that the ninety-day limitation begins to run from a given, ascertainable time, not ninety days after the end of an indeterminate fact-gathering or fact-finding process.

Moreover, we believe that if VRS and its Medical Board were allowed to control the commencement of the ninety-day decision period through a fact-gathering stage that has no boundaries as to time, the APA and its carefully designed parallel time limitations would be meaningless.  The time limitations established in the APA are contingent on whether a hearing officer is utilized.  When a "hearing officer, as described in § 9-6.14:14.1, is not used or is not empowered to recommend a

9

finding,"[8] the agency must render a decision within ninety days from either "the date of the informal fact-finding proceeding," Code § 9-6.14:11(D), or the "date of the formal proceeding." Code § 9-6.14:12(G). However, when a hearing officer is used in either the formal or informal procedure and makes the initial decision in the form of a recommendation to the agency, the hearing officer, not the agency, gets ninety days "from the date of the case decision proceeding" in which to render a decision. Code § 9-6.14:14.1(D). The agency must then render its decision "within thirty days from the date that the agency receives the hearing officer's recommendation." Code §§ 9-6.14:11(E) and 9-6.14:12(H). This thirty-day limitation applies whether the procedure used is informal or formal.

The larger block of time granted the initial decision-maker, whether the agency or its representative as in this case, or a hearing officer, is indicative of the General Assembly's recognition that the initial decision-maker will necessarily need more time to perform such tasks as hearing oral testimony and reviewing documents. If a hearing officer is used and recommends a decision, an agency then will need less time to

---

[8] Under Code § 9-6.14:14.1(A), a hearing officer must meet certain standards, and the Executive Secretary of this Court prepares and maintains a list of such individuals. The parties in this appeal agree that the agency representative utilized by VRS was not a hearing officer.

render a final case decision.  The intention of the General Assembly to afford the initial decision-maker more time is further evidenced by the provisions that restart the running of the ninety days if the board members or agency personnel cannot carry out their official duties.  Code §§ 9-6.14:11(F) and 9-6.14:12(I).

Thus, the General Assembly clearly specified when an agency has thirty days or ninety days to render a final case decision.  To permit VRS to control the time within which it will render a decision by allowing it to deem fact-gathering to be ongoing ignores both the structure and the intended purpose of the multiple time limitation provisions in the cited sections of the APA.

The one overriding objective of the General Assembly evident in the structure of the APA is that an agency not operate free of time constraints when making a case decision.  The General Assembly sought to avoid precisely what happened in this case, a claimant waiting 195 days after the informal conference for a decision.  The time limitations in the APA, regardless of the procedure used, reflect the General Assembly's desire that agencies make timely decisions.  We believe that our decision is in accord with that objective.  See Dowdy v. Franklin, 203 Va. 7, 10, 121 S.E.2d 817, 819 (1961) ("[W]e give weight to the object of the statute and the purpose to be

accomplished thereby."). Our decision also provides claimants with an ascertainable date from which to calculate the ninety days.

Furthermore, counting the ninety days from the date of the informal conference or consultation, or the formal hearing, does not, as VRS insisted, conflict with the basic laws of VRS. Although the Medical Board is required to review all medical reports and statements and to report its findings and recommendations to VRS, the Medical Board is subject to control by VRS. Thus, VRS can require the Board to perform its work within the ninety days when, as in this case, it needs an additional review of medical evidence. Thus, neither the Medical Board's work nor any other provision in the basic laws of VRS conflicts with the time constraints of the APA.

Finally, VRS argued that the doctrine of sovereign immunity requires that Code § 9-6.14.11(D) be interpreted in favor of the sovereign. VRS claims that the default provision mandating a decision in favor of the claimant when the agency fails to make a timely decision, even though the merits of the claim have not been adjudicated, adversely affects the sovereign's pecuniary interests. We find nothing in the doctrine of sovereign immunity that requires a departure from the recognized principles of statutory construction.

Therefore, we conclude that the ninety-day period prescribed by Code § 9-6.14.11(D) commenced to run in the present case on April 25, 1995. Since VRS did not render a case decision within ninety days or within the thirty days after Rizzo advised VRS that a decision was due, a decision "is deemed to be in favor of" Rizzo. Code § 9-6.14:11(D). Accordingly, we will reverse the judgment of the Court of Appeals and enter final judgment here reinstating the judgment of the circuit court.

<u>Reversed and final judgment.</u>

CHIEF JUSTICE CARRICO, with whom JUSTICE COMPTON and JUSTICE HASSELL join, dissenting.

I disagree with the majority's holding that the date from which the ninety-day limitation began to run in this case was the commencement of the informal fact-finding proceeding. I can find nothing in Code § 9-6.14:11 that mandates this holding, and, moreover, I think it would be more consistent with the applicable statutory provisions to hold that the limitation began to run from the end of the informal fact-finding proceeding, rather than its beginning.

The apparent basis for the majority's holding is that there is no difference between the term "informal conference or consultation proceedings," as used in subsection A of Code § 9-6.14:11, and the term "informal fact-finding proceeding," as

13

used in subsection D.  Disavowing any difference, the majority says that the term "'fact-finding proceeding' . . . must be 'given its ordinary meaning, given the context in which it is used.'"  The majority then concludes that the term "informal fact-finding proceeding" in subsection D means the same thing as "conference or consultation proceedings" mentioned in subsection A and, in this case, "that proceeding was the informal conference that the agency representative held on April 25, 1995."

However, "'[w]hen the General Assembly uses two different terms in the same act, it is presumed to mean two different things.'"  Klarfeld v. Salsbury, 233 Va. 277, 284-85, 355 S.E.2d 319, 323 (1987) (quoting Forst v. Rockingham Poultry Mktg. Coop., Inc., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981)).  I would conclude, therefore, that, in the context in which the two terms are used in the Administrative Process Act, an informal fact-finding proceeding, while it may include an informal conference or consultation proceeding, is intended to mean the whole fact-finding process involved in a particular case.  And, in the particular case now before us, the process included receipt by VRS of the report of the Medical Board pursuant to Code §§ 51.1-124.23 and -156.  Until receipt of that report, the fact-finding process was not complete and the VRS could not

14

render a decision on Rizzo's application for disability retirement.

Since VRS is not free to render a decision in a disability retirement case like the present one until the fact-finding process ends upon receipt of the Medical Board's report, it is only logical, in my opinion, to have the ninety-day limitation begin to run from the end of the fact-finding process, rather than its beginning.  I do not share the majority's fear that, unless the limitation is made to run from the commencement of the fact-finding process, the VRS and the Medical Board would manipulate the process and render meaningless the time limitations established in the APA.  It is presumed that public officials will discharge their functions correctly, Hladys v. Commonwealth, 235 Va. 145, 148, 366 S.E.2d 98, 100 (1988), and I am willing to accord VRS and the Medical Board that presumption.

Accordingly, I would affirm the judgment of the Court of Appeals.

15